[Filed April 13, 1885.]

## DAVID M. GUTHRIE v. JAMES IMBRIE.

PRINCIPAL AND AGENT — CONTRACT — CORPORATION. — When a person executing a contract merely adds to the signature of his name the word "sec.," "agent," "trustee," without disclosing the name of his principal, he is personally bound.

ID. — CORPORATE SEAL — PROMISSORY NOTE. — But where a promissory note is signed "A B, Pres't," and "C D, Sec. G. M. Co.," and on its face is plainly stamped an impression of a seal bearing the words "Granger Market Co.," it must be assumed that the seal was put there to serve some purpose. Such an instrument indicates an intention to bind the company and not the individuals.

ID. — EVIDENCE — AMBIGUITY — PAROL PROOF. — Semble, that between the original parties, when the instrument is ambiguous or uncertain upon its face, and the matter is in doubt whether the principal or agent is liable, such uncertainty may be removed by extraneous proof.

ID. — EFFECT OF CORPORATE SEAL. — (Per WALDO, C. J., dissenting.) — The sole purpose of a corporate seal is to give full faith and credit to the writing to which it is appended. Where a promissory note is signed by the president and secretary of a corporation as such, without other words indicating that the note is the act of the corporation, affixing the seal cannot be construed into a declaration that they signed on behalf of the company.

WASHINGTON COUNTY. Plaintiff appeals. THAYER, J., having been an attorney in the case, did not sit.

The court being equally divided in opinion, the case stands affirmed under the statute.

The facts are stated in the opinion.

*Thos. H. Tongue,* for Appellant.

The liability of J. J. Imbrie is not in question. Whatever effect the addition to his signature and the impression of a seal may have as to his liability, it does not affect the liability of James Imbrie. That will be determined by the contract as signed by him. The decision of the court, therefore, in holding him personally liable upon the face of the contract was in accordance with a long line of authorities. (*Tucker* v. *Bass,* 5 Mass. 164; *Foster* v. *Fuller,* 6 Mass. 58; *Fowler* v. *Shearer,* 7 Mass. 14; *Buffum* v. *Chadwick,* 8 Mass. 103; *Sumner* v. *Williams,* 8 Mass. 162; *Mahew* v. *Prince,* 11 Mass. 53; *Brinley* v. *Mann,* 2 Cush. 339; *Packard* v. *Nye,* 2 Met. 47; *Simonds* v. *Heard,* 23 Pick. 120; *Seaver* v. *Coburn,* 10 Cush. 324; *Barker* v. *Mechanics' Fire Ins. Co.* 3 Wend. 94; *Moss* v. *Livingston,* 4 N. Y. 209; *De Witt* v. *Walton,* 9 N. Y. 571; *Sturdevant* v. *Hull,* 59 Me. 172; S. C. 8 Am. Rep. 409; *Tannatt* v. *Rocky Mountain Bank,* 1 Colo. 278; *Burlingame* v. *Brewster,* 79 Ill. 515; S. C. 22 Am. Rep. 177, and n. on 186; *Orchard* v. *Binninger,* 51 N. Y. 652; *Hall* v. *Bradbury,* 40 Conn. 32;

*Lincoln* v. *Crandall,* 21 Wend. 101; *Auburn City Bank* v. *Leonard,* 40 Barb. 119; *Lee* v. *M. E. Church,* 52 Barb. 116; *Hall* v. *Cockrell,* 28 Ala. 507; *Sayre* v. *Nichols,* 5 Cal. 487; *Titus* v. *Kyle,* 10 Ohio St. 445; *Blakely* v. *Bennecke,* 59 Mo. 193; *Dennison* v. *Story,* 1 Oreg. 272.) Defendant's intention is not material except as expressed. (*Sumner* v. *Williams, supra.*) If doubtful, he is bound. (*De Witt* v. *Walton,* 9 N. Y. 571.) Plaintiff's knowledge, if he had any, that defendant was acting for another does not discharge the latter. (*Hastings* v. *Lovering,* 2 Pick. 221; *Sturdevant* v. *Hull, supra.*) After deciding that the notes were those of James Imbrie, on their face, the court permitted parol testimony to be given, to discharge him. This ruling is not supported by *any* authority that we have seen. Parol evidence was admitted to show the intent of defendant not to be bound by his contract. This was not admissible. (1 Greenl. Ev. §§ 275, 277, 281; *Sturdevant* v. *Hull, supra; Tannatt* v. *Rocky Mountain Bank, supra; Smith* v. *Caro,* 9 Oreg. 278.)

*R. Williams,* for Respondent.

The impression of the seal of the Granger Market Company upon the notes, and the additions to the name of James Imbrie, of the word "president," and to the name of J. J. Imbrie, of the words, "sec'y G. M. Co.," show the notes were intended to be the act of the corporation, rather than the act of James and J. J. Imbrie, or the joint act of the three. (*Hovey* v. *Magill,* 2 Conn. 680; *Means* v. *Swormstedt,* 32 Ind. 87; Angell & A. on Corp. § 224.) But if it is doubtful from the face of the notes who the makers were intended to be, or who it was intended to bind thereby, or what the true meaning, in any other respect, may be, then parol evidence of the circumstances surrounding the parties under which the notes were made is admissible for the purpose of enabling the court to determine who the makers were. (1 Daniel Neg. Inst. § 418; 2 Wharton Ev. §§ 937, 951, 1061; Abbott Trial Ev. p. 402, § 26; *Hood* v. *Hallenbeck,* 7 Hun, 362; *Watervliet Bank* v. *White,* 1 Denio, 608; *Haile* v. *Peirce,* 32 Md. 327; *Babcock* v. *Beman,* 11 N. Y. 200; *Bank of N. Y.* v. *Bank of Ohio,* 29 N. Y. 619.)

LORD, J.— This action was commenced to recover the amount due on two promissory notes. As both notes are alike in form and purport, the copy of the following will be sufficient for the purposes of this case:—

"$500.                    PORTLAND, OREGON, July 8, 1875.

"For value received, we promise to pay to David Guthrie, or order, ninety days after date, five hundred dollars in U. S. gold coin, without interest.

  [Signed]                    "JAMES IMBRIE, Prest.

  [SEAL.]                    "J. J. IMBRIE, Sec. G. M. Co."

On each note is the impression of a seal, containing the inscription, "Granger Market Co., Portland, Oregon, November 4, 1874." The defendant demurred to the complaint, for insufficiency of facts stated, and the demurrer was overruled. The defendant J. J. Imbrie was not served, and did not appear. The defendant James Imbrie in his answer pleaded that he executed the notes in question as president of the Granger Market Company, a domestic corporation, for a debt due the plaintiff from it, without other consideration, and the plaintiff received the notes as the notes of the Granger Market Company. The reply denied all the material allegations of the answer. Upon issue being thus joined, a trial was had, which resulted in a verdict and judgment for the defendant.

By the record it appears that all the questions we are required to consider, both in respect to the testimony received and that offered and ruled out, as well as the objections to the charge of the court to the jury, and to the special instructions asked and refused, may be resolved into two: *First.* Are these the individual notes of the defendants, or the notes of the Granger Market Company? *Second.* Are the notes so ambiguous or unintelligible in their language or terms that no rational interpretation can be given of their meaning, according to the canons of sound construction, without the aid of extraneous proof? To ascertain the proper interpretation of a written contract, the rule adopted by the courts is to give full effect to all the terms in which the contract is expressed. The words used are to be taken in their plain, ordinary, and usual sense, unless their

meaning be restricted by usage or the context. The rule assumes that the language employed is inserted in the contract for some purpose, and is intended to have some meaning and effect. This being so, the intention of the parties is to be discovered from the whole contract. The question, therefore, whether a bill or note has been executed by a party in his individual or official capacity must be determined from the intent as collected from the whole instrument, however inartificially drawn, or informally the intention may be expressed. " If, from the nature and terms of the instrument," says Judge Story, "it clearly appears, not only that the party is an agent, but that he means to bind his principal and to act for him, and not to draw, accept, or indorse the bill on his own account, that construction will be adopted, however inartificial may be the language, in furtherance of the actual intention of the instrument. But if the terms of the instrument are not thus explicit, although it may appear that the party is an agent, he will be deemed to have contracted in his personal capacity." (Story Ag. § 153.) Again he states the rule thus:—

" A liberal construction is ordinarily adopted in the exposition of commercial instruments, for the purpose of encouraging trade, and to meet as far as possible the ordinary exigencies of business, which require promptitude, and rarely admit of deliberate examination of the true force of words. In furtherance of this policy, if it can upon the whole instrument be collected that the true object and intent of it are to bind the principal, and not to bind the agent, courts of justice will adopt that construction of it, however informally it may be expressed." (Story Prom. N. § 69.)

This rule of construction is clear, easily understood, and designed to promote the ends of justice, but, owing to the different forms and modes of expression used in written contracts, there is often found some difficulty in applying its principles. In executing a note or other written instrument, in order to discharge himself from personal liability, the agent must adopt such form of expression, or use such language as will show the writing to be the act of the corporation and intended to bind it.

"It seems," says Parker, J., "to be a general principle that the signer of any contract, if he intends to prevent a resort to himself personally, should express in the contract the quality in which he acts." (*Mayhew* v. *Prince*, 11 Mass. 54.)

Leaving out of consideration the seal upon the note in question, there is nothing in its terms or language which purports to bind the corporation or to be a contract of the corporation. The language is "we promise," etc. The words "prest." and "sec. G. M. Co.," attached to the signatures are merely *descriptio personarum*. They do not disclose the name of any principal, and, in fact, are too indefinite, without the aid of extraneous proof, to designate any corporation. When a person merely adds to the signature of his name the word "sec.," "agent," "trustee," without disclosing the principal, he is personally bound. This is undoubtedly the ordinary rule, and supported by much authority. In *Scott* v. *Baker*, 3 W. Va. 290, the court say :—

"The president and treasurer, together or separately, may have had authority to make the notes of the company, but in this instance the note is not executed for the company, or in the name of the company, and the addition of president and treasurer to their names cannot have the effect to make it the note of the company."

(See also *Hays* v. *Crutcher*, 54 Ind. 261; *Tucker Manuf. Co.* v. *Fairbanks*, 98 Mass. 102; *Sturdevant* v. *Hull*, 59 Me. 172; *Burlingame* v. *Brewster*, 79 Ill. 516; *Tannatt* v. *Rocky Mountain Bank*, 1 Colo. 279; *Towne* v. *Rice*, 122 Mass. 75; *Chamberlain* v. *Pacific Wool G. Co.* 54 Cal. 106; *Cahokia* v. *Rautenberg*, 88 Ill. 220; *Bank* v. *Cook*, 38 Ohio St. 444; Ewell's Evans Ag. 248, notes; 1 Daniel Neg. Inst. § 403.)

But the character in which the signatures were attached to the note in hand, and the intent, as discoverable from that instrument, whether to bind the corporation or the individuals signing it, is relieved of much difficulty when the seal is taken into consideration. On the note is an impression of a seal bearing the words "Granger Market Co." It must be assumed that the seal bearing these words, plainly stamped upon the

note, was put there to serve some purpose, and to give some effect to the instrument, and certainly it tends to explain the purport and purpose of the words "prest." and "sec. G. M. Co." attached to the signatures, and to indicate the quality or capacity in which such signers of the note acted. In *Means* v. *Swormstedt*, 32 Ind. 87, where the secretary of an incorporated company gave a promissory note, using the words "we promise to pay," etc., and signed it with his own name, with "sec'y" affixed, and impressed thereon the seal of the corporation bearing the words "Neal Manufacturing Co., Madison, Ind.," it was held that he was not personally liable thereon. The court say:—

"The seal of the company is in the hands of the secretary. It is his duty to affix it to papers executed by the corporation. The presumption is, then, that he did, after signing his name and adding his office, affix the seal of the corporation, which, containing upon its face the proper designation of the corporation, was a signing of their name."

And again:—

"It can be a matter of no import how a name is affixed to a paper, whether written with ink or pencil, printed or stamped. The intent in placing it there must control, and where that intent is evident, effect should be given to it. . . . . The note was plainly intended to read as executed by 'Wm. B. Swormstedt, Sec'y Neal Manufacturing Co., Madison, Ind.'; and if effect be given to the addition to the name, the corporation must be bound."

It will be noticed in this case that the plural expression "we promise" is followed by a single signature, which is more consistent with an intent to bind the company, who are many, than the individual. But certainly little importance was attached to this fact by the court, as there is no reference or allusion to it, although it may have received consideration in connection with other and stronger *indicia*, upon which stress was laid and deemed controlling in determining the intent with which the note was executed. It is, however, this respect in which the note in that case is distinguishable from the one before us.

Here the plural expression "we promise" is followed by two signatures, which is as consistent with the intent to bind themselves individually as to bind the company, unless the effect of the seal with its designation of the company excludes the intent to bind personally.

In the particular just noted, more nearly the counterpart of this case under consideration is that of *Dutton* v. *Marsh*, Law R. 6 Q. B. 361, where a different conclusion was reached as to the effect of merely affixing the seal. There the note was : —

"We, the directors of Isle of Man Slate & Flag Company, limited, do promise to pay John Dutton, Esq., the sum of 1,600£, sterling, with interest at the rate of six per cent until paid, for value received.

"RICHARD J. MARSH, Chairman.

"JOSEPH HIGGINS.

"SAMUEL BRONDBERT.

"HENRY JOHNSON.

"Witnessed by

[L. S.]

"LESLIE LOCHORT."

In the corner of the note the company's seal was affixed, with "witnessed by Leslie Lochort." The question was whether the putting of the company's seal on the note was not equivalent to saying "on behalf the company." In delivering the judgment of the court, Cockburn, C. J., said : —

"But this case was rendered doubtful by the fact of the corporate seal being affixed to the document. It does not purport in form to be a promissory note, made on behalf of or on account of the company. So far as the written portion of it goes, it is totally without such qualifying expression, but some doubt was raised in my mind whether the affixing of the seal might not be taken as equivalent to a declaration in terms, on the face of the note, that the note was signed by the persons who put their names to it on behalf of the company, and not on behalf of themselves. But, on consideration, I agree with my learned brothers this effect cannot be given to placing this seal of the company upon the note. It may be that it was simply for the purpose of

ear-marking the transaction, or, in fact, showing as to the directors that, as between them and the company, it was for the company they were signing the note, and that it was a transaction in which the proceeds to be received upon the note would operate to the benefit of the company; but there is no case that goes to the extent of saying that the affixing of the seal, when the parties do not otherwise use terms to exclude their personal liability would have that effect. We think it is going too far to say that the mere affixing of the seal has that effect."

It does not appear from this case that the corporate seal was attached with an impression of the name of the company, as in *Means* v. *Swormstedt, supra,* or as in the case before us. There was a seal affixed, but whether it contained a designation of the company or some other device is not disclosed. If the seal did bear an impression of the name of the company, the case is only distinguishable from *Means* v. *Swormstedt, supra,* in the particular already noted to the case under consideration. But we apprehend the seal did not bear an inscription of the name of the company; and if this view is correct, mere affixing of the seal to the note in that case was not a signing of the company's name, within the reason of *Means* v. *Swormstedt,* but, as was said, simply for the purpose of ear-marking the transaction; and therefore was not the use of such terms by the parties as would have the effect to exclude their personal liability. But in our judgment, the note before us does fall within the reason and principle decided in *Means* v. *Swormstedt.* It was signed by "James Imbrie, Prest.," and "J. J. Imbrie, Sec. G. M. Co.," and the seal is affixed to it bearing in plain characters the inscription "Granger Market Co." The rule of construction requires us to give effect to every word, if possible, and if any effect or significance is to be given to the name of the company, plainly stamped upon the paper or note, we know that the words "prest." and "sec. G. M. Co." attached to this signature, instead of being mere surplusage, or useless appendages, are susceptible of being made operative consistently with the terms of the whole instrument, and mean that these persons are such officers of that company, and are intended to indicate the official

character in which they acted when the note was executed. We know that these words were intended to serve some purpose; and what other purpose can they serve, taking into account the corporative name, which is consistent with the terms of the promise, but to indicate their official character, and that they acted on behalf of the company, and not on their individual behalf? We know that it is the duty of the proper officer, generally the secretary, to affix the seal to the papers executed by the corporation, and when, after signing his name and adding his office, he affixes the seal of the corporation, which, as the court say in *Means* v. *Swormstedt, supra,* "containing upon its face the proper designation of the corporation, was a signing of the company name."

In *Scanlan* v. *Keith,* 102 Ill. 640, where the note sued upon was, "ninety days after date we promise to pay to the order of John Scanlan," etc., and was signed underneath at the right hand "Sam'l L. Keith, Prest. Chicago Ready Roofing Co.," and at the left hand, at the usual place for the signature of an attesting witness, was signed "W. H. Kretzinger, Sec'y," with the seal of the "Chicago Ready Roofing Company" attached, it was held to be the note of the company. In delivering the opinion of the court, Scott, J., said:—

"It is inconceivable a person familiar with the business transacted by a corporation, taking a note executed by its officers under its corporate seal, should believe he was obtaining the individual note of the officers whose names are attached to it. It needs no extrinsic evidence to show that such a note is the obligation of the corporation. Such is the common understanding, from what appears upon the face of the instrument itself. A most unreasonable conclusion it would be to hold that a secretary of a corporation, who attests such an instrument by his signature and the corporate seal, thereby becomes a joint maker. That is precisely the case here. Kretzinger was secretary of the corporation, and for aught that appears in this record he did nothing more than attest the execution of the note and affix the seal of the corporation. Should that act by judicial construction be held to constitute him a joint maker of the instru-

ment to which his name is attached, it would be to make a note for him, which the party himself certainly never had the remotest intention of doing. The same reasoning applies with equal force to the defendant, who made the note as president of the corporation, in connection with the secretary, using the seal of the corporation."

It may often happen in the haste incident to the prompt execution of business, or through inadvertence, being more intent on the substance than the form, that merchants or others engaged in business transactions express themselves in their writings informally, and without precision of language, and hence the liberal policy of allowing the intent of the parties to govern, as discoverable from the whole instrument. But we do not think it is usual for persons engaged in business transactions, when acting for themselves and not in a representative capacity, to attach to their signatures such designations of office, and to attest the same with the seal of the corporation bearing an impression of its corporate name. On the contrary, we believe when such things are done, and the instrument is consistent and operative with such *indicia*, they are more properly referable to the company than the persons as individuals who signed the instrument.

We think the notes in question were executed on behalf of the corporation, and not personally, and were the notes of the company. It seems, however, that the court below, in overruling the demurrer, expressed the opinion that the notes were the notes of the defendant, and not of the corporation; but evidently, from the testimony received and objected to, and the instructions given and refused, as disclosed by the bill of exceptions, the court considered the notes ambiguous on their face, and evidence necessary to fix their true character. No other view is consistent with the course pursued by the court; for if the notes are not uncertain on their face, as we think, there exists no necessity for resorting to parol proof. The case has been tried on this basis, and the question of admissibility of such evidence been presented and discussed to us. But it is not necessary for us to go into much examination of this subject, or review the decisions upon it. It is sufficient for us to state that

our impression is, as between the original parties, when the instrument is ambiguous or uncertain upon its face, and the matter is in doubt whether the principal or agent is liable, such uncertainty may be removed by extraneous proof. (*Haile* v. *Peirce*, 32 Md. 331; *Klostermann* v. *Loos*, 58 Mo. 292; *Hood* v. *Hallenbeck*, 7 Hun, 367; *Mechanics' Bank* v. *Bank of Columbia*, 5 Wheat. 326; *Metcalf* v. *Williams*, 104 U. S. 97; 1 Daniel Neg. Inst. § 418; 2 Whart. Ev. 1058–1061.)

The bill of exceptions discloses that the persons signing the notes as "prest." and "sec. G. M. Co." were such officers of the corporation, and authorized to execute the notes; that they executed and signed the notes as such officers, and the secretary affixed the seal, for and on behalf of the corporation; and that the consideration for the notes was cattle purchased by the company, and were given by the company, and received as such in payment of the same. Upon the theory that it was doubtful from the face of the notes whether they were intended to operate as a personal or corporate engagement, we do not discover any error. I think, therefore, the judgment should be affirmed.

WALDO, C. J. — The case of *Dutton* v. *Marsh*, Law R. 6 Q. B., 361, can hardly be distinguished from the present. The court in that case argued that, assuming the seal not to be affixed, the note was clearly the note of the individual signers. If, then, it became the note of the company by reason of the seal being affixed, affixing the seal must be the equivalent of a declaration that the directors signed the note on account of or on behalf of the company. And they say, "we think it is going too far to say that the mere affixing the seal has that effect." So in this case, assuming the seal not to be affixed, the note is the note of the defendants, and consequently, as in *Dutton* v. *Marsh*, affixing the seal cannot be construed into a declaration that they signed on account of or on behalf of the company. If the seal shall have the effect to make the company a party at all, there are grounds for saying that it shall make it a several obligor. (Daniel Neg. Inst. § 34, citing *Rankin* v. *Roler*, 8 Gratt. 63.) A note under seal is a specialty, and not a negotiable promissory

note. (*Clark* v. *Farmers' Co.* 15 Wend. 256; *Hopkins* v. *Railroad Co.* 3 Watts & S. 410; *Conine* v. *Junction & B. R. Co.* 3 Houst. 288.) But in this case a function seems to be claimed for the seal hitherto unknown to the law. "The sole purpose of the seal is to give full faith and credit to the writing to which it is appended." (*U. S. Bank* v. *Dandridge,* 12 Wheat. 93; Holmes Com. Law, 272.)

It is not claimed in this case that the seal authenticates the note, and thereby puts it under seal. But if it does not do this, it performs no function appertaining to the office of a seal. The law declares the function and effect of a seal, and the court cannot say that it shall perform some other office. It can make no difference what the impression may be, because the seal does not prove itself, and the effect of any impression, when proved to be an impression of the corporate seal, must be precisely the same in all cases. It is necessary, then, and the endeavor is, to construe the act of affixing the seal not as an act of authentication, but as a declaration in parol. To do this the seal, as a seal, must be discarded, and extrinsic evidence admitted to show the intention. The words "The Granger Market Co." were but a part of the impression of the seal of the Granger Market Company, and, as such, go to make up the identity of its seal, and nothing more, as any device substituted for them would have done. If the intention were not to impress the seal, but these words alone, on the paper, that intent is a fact to be proved to contradict the presumption of law created by the act of impressing the seal. The moment this is attempted we come in conflict with the rule that "the liability of the defendants, as drawers of a negotiable instrument, must be determined from the instrument itself." (*Tucker Manuf. Co.* v. *Fairbanks,* 98 Mass. 104.) "He who takes negotiable paper contracts with him who on its face is a party thereto, and with no other person." (Met. Cont. 108.) "Is it not a universal rule," says Lord Ellenborough, *Leadbitter* v. *Farrow,* 5 Maule & S. 349, "that a man who puts his name to a bill of exchange makes himself personally liable, unless he states on the face of the bill that he subscribes it for another, or by procuration of

another, which are words of exclusion? Unless he *plainly* says ' I am the mere scribe,' he becomes liable." " Not quite a universal rule," say the Supreme Court of the United States; but the rule remains.

It is well settled that whether a principal or his agent is the party liable upon a promissory note or bill of exchange, must be ascertained from the instrument itself. All evidence *dehors* the instrument is to be excluded. (*Barlow.* v *Congregational Soc.* 8 Allen, 460; *Brown* v. *Parker*, 7 Allen, 337; *Slawson* v. *Loring*, 5 Allen, 342; *Rendell* v. *Harriman*, 75 Me. 497.) " If 'it is left ambiguous on the face of the instrument whether they have so signed it, the construction most against the person signing should prevail." (Crompton, J., in *Deslandes* v. *Gregory*, 2 El. & El. 609.) In many of the States there seems to be too slender a union between principle and practice. The result is that uncertainty and confusion which usually follows departure from principle.

In *Means* v. *Swormstedt*, the seal, as viewed by the court, showed that William M. Swormstedt was secretary of the Neal Manufacturing Company. " The note was plainly intended to read as executed by Wm. M. Swormstedt, Sec'y Neal Manuf. Co., Madison, Ind."; and this, it seems, was thought sufficient to create a corporate obligation. The authorities are certainly nearly all the other way: It should seem that if the seal cannot have effect as a seal, it cannot have any operation at all, the exclusion of extrinsic evidence leaving it where it was left in *Dutton* v. *Marsh*. It follows that the defendants ought to be held liable.