## DOMICILE OF MINOR.

[Common Pleas Court of Lorain County.]

### IN RE GUARDIANSHIP OF JAMES EDWARD MURRAY.

Decided, April, 1906.

*Parent and Child—Guardian and Ward—Domicile of Minor—Jurisdiction of Probate Court—Section 6254, Relating to the Appointment of Guardians of Minor Residents.*

1. A minor can not himself change his domicile, and as the residence of a minor is determined by the domicile of a parent or some person standing in the relation of a parent to him, the word "resident," as used in Section 6254, Revised Statutes, means "domicile."

2. Where the father who is the last surviving parent of a minor, dies while domiciled with the father's parents, and the minor continues, for a time after the death of his father to reside with the grandfather, the minor is a "resident" of the county in which the grandfather is domiciled, within the meaning of Section 6254, Revised Statutes of Ohio.

3. Where a minor five years old, so domiciled with his grandfather, is removed by his aunt, with the consent of said grandfather, to another county to live in and as a part of the family of such aunt, the domicile of such minor is not thereby changed so as to give the probate court of the county in which said aunt has her domicile, jurisdiction to appoint a guardian for said minor, while said grandfather is living and has not changed his domicile.

WASHBURN, J.,

By the report of the referee in this case it appears that he found the following facts:

That James Edward Murray, an infant about five years of age, was brought to Elyria by his aunt, Mrs. Loveland, on the 28th day of November, 1904, and about ten days thereafter, on December 9th, 1904, the probate court of this county appointed Mrs. Loveland guardian of said child.

It also appears from the findings of facts in said report, that said child had never lived in this county before that time; that neither his father or mother lived or died in this county, and that none of his grandparents ever lived in this county.

The report further finds, that his father, Patrick J. Murray, was born and raised in Wakeman, Huron county, Ohio, where he resided until he was married; that after he was married he

moved to Chillicothe and remained a year or so and then moved to Athens, Ohio, and lived there three years or more, and while he lived there his wife was stricken down with consumption, and he resigned his position, sold most of his household goods, packed the remainder and stored them in Athens, and that he and his wife and child went to Texas for his wife's health.

It further appears from this report, that he remained in Texas some two or three months, and his wife's health not improving, he came back to Ohio with his family; he stopped about a month with relatives in Toledo and then came on with his wife and child to Wakeman, and stayed there with his father and mother until he died; that soon after he returned to the home of his father he had shipped to him the balance of his household goods from Athens. That about six weeks after his return to his father and mother in Wakeman his wife died, and that about five months thereafter he died.

The report further finds that he abandoned his residence in Athens, Ohio.

His child, James Edward Murray, who was afterwards brought to Lorain county, was with his father all this time, and was with his father at said grandparents' home in Wakeman at the time of his father's death, and about ten days after the father's death said aunt, with the consent of the grandmother, brought said James Edward Murphy to this county.

The report further finds that after the death of Patrick J. Murray, the said grandparents, Michael Murray and Honora Murray were the natural guardians of said minor, James Edward Murray.

Other relatives of the child began proceedings in probate court, asking to have the appointment of said aunt, Mrs. Loveland, as guardian, set aside, on the ground that the Probate Court of Lorain County had no jurisdiction to appoint a guardian over said minor.

The probate court refused to remove said guardian, and the matter was appealed to the common pleas court.

In this court by agreement of the parties this case was referred to a referee, to report his findings of fact and conclusions of law, and the matter is now before this court on motion for a new trial and exceptions to said report.

Said report finds as a conclusion of law drawn from the facts as above enumerated, although it is erroneously stated in the report as a conclusion of fact, "that said James Edward Murray, minor, had a residence in Lorain county, Ohio, on the 9th day of December, 1904," that being the day the guardian was appointed.

The facts as shown by said report upon which said referee based his finding of law, that said minor, James Edward Murray, was a resident of Lorain county on December 9, 1904, when the guardian was appointed, succinctly stated are as follows:

The mother of said minor was not domiciled in Lorain county at the time of her death, and never had been domiciled in Lorain county; the father of said minor was not domiciled in Lorain county at the time of his death and never had been domiciled in Lorain county; the grandparents of said minor were not at the time of the appointment and never had been domiciled in Lorain county.

The father and mother died at the home of the grandparents in Huron county, and the child was with them all the time they were at the home of said grandparents; and remained with said grandparents some days after the death of said father and mother; within ten days after the death of said father said minor was brought to the home of his aunt in Lorain county, who within ten days thereafter was appointed guardian by the Probate Court of Lorain County.

The statute under which the Probate Court of Lorain County made this appointment, reads as follows:

"The probate court of each county shall, when necessary, appoint guardians of minors, resident in said county." Section 6254.

"Resident" as used in this statute, means the same as "domiciled." Rockel, Vol. 2, Section 1322.

That is, merely living in the county with some one is not sufficient, if the domicile of the parent or some one standing in the relation of a parent is in another county.

It was expressly held under a similar statute in Alabama that "resident" was the same as "domicile." *Allgood* v. *Williams,* 8 Southern Reporter, 782.

In our state, even when our statute read that the court of common pleas should have power to appoint guardians for all minors "within their county" the Supreme Court treated "within their county" as meaning the same as "domiciled" in the county. In that case the minor had not resided in the county where the appointment was made for five years, and during all that time had been in the county but once, and then only for one day, and was not in the county at the time the appointment was made, but was then and had been for five years in another state, where he was apprenticed by his mother, his father being dead. The court held that "the father being dead, the mother was the natural guardian of the child," and the child's domicile was that of the mother, although he resided elsewhere. 12 O., 194; 34 O. S., 525, at page 534; see, also, 15 Pa. County Court, page 325; 13 Pa. County Court, page 179; 32 Northwestern Reporter, page 504; Law of Domicile, Jacobs, Section 75.

In order to give the Probate Court of Lorain County jurisdiction then, the minor must have been domiciled in Lorain county at the time of the appointment of the guardian.

The law is, that at the time of the death of the father the domicile of a minor is the domicile of the father at the time of said death, and in this case wherever the domicile of the father was, it is shown by said report that it was not in Lorain county.

Where the last surviving parent of a minor dies at the home of the grandparents of the minor, with whom said parent and said minor are residing at the time of the death of the parent, then said grandparent becomes the natural guardian of said minor, and if the minor continues to reside with said grandparent, then the domicile of said grandparent becomes the child's domicile.

The case then is, said minor on November 28, 1904, was not domiciled or residing in Lorain county, but was domiciled with his natural guardians in Huron county, and the only thing that would give the Probate Court of Lorain County jurisdiction to appoint a guardian of that minor, would be the changing of the domicile of said minor from said Huron county to Lorain county.

How could that be done, and was it done in this case? These are important questions in this case, and their solution determine the jurisdiction of the Probate Court of Lorain County to appoint a guardian for said minor.

A minor can not himself change his domicile. American Law of Guardianship, Woerner, page 31; Schouler on Domestic Relations, Section 230; Law of Domicile, Jacobs, Section 229; 34 O. S., at page 535; 3 Ohio, 99.

The father is the natural guardian of the child, and while the father lives the domicile of the child is the same as that of the father. Law of Domicile, Jacobs, Sections 235, 236; 3 Ohio, 99.

The father can change the child's domicile only by changing his own domicile. Law of Domicile, Jacobs, Section 236; 17 Ohio State, 31.

After the father's death the mother became the natural guardian of the child, and the child's domicile is then the domicile of the mother. Law of Domicile, Jacobs, Section 238; 12 Ohio, 194; 5 Ohio, 315.

She can change the domicile of the child only by changing her own domicile. Law of Domicile, Jacobs, Section 240; 112 U. S., 458; 12 Ohio, 194.

"As infants have the domicile of their father, he may change their domicile by changing his own; and after his death the mother, while she remains a widow, may likewise by changing her domicile, change the domicile of the infants; the domicile of the children, in either case, following the independent domicile of their parents." Law of Domicile, Jacobs, Section 240; 112 U. S., 452.

After the death of both the father and mother, the grandfather becames the natural guardian of the child. 114 U. S., 218; Reeve on Domestic Relations, 315; 15 Georgia, 414.

"As between two ancestors of equal degree, probably the one, would have the power to change the domicile, who first got possession of the infant, and with whom the latter actually resided." Law of Domicile by Jacobs, Section 245.

I know of no way in which the grandparent can change the domicile of the child except in the same way that the father or mother can change a child's domicile, and that is by changing

his or her own domicile.    In fact a child's domicile never changes, except with the domicile of the father or mother or grandparent, or some other person standing in *loco parentis,* or by operation of law, as where the surviving parent dies, domiciled at a place other than the domicile of the grandparent, when, if the child goes to live with the grandparent, and actually resides with and becomes a member of the family of the latter, its domicile is changed to that of the grandparent.    114 U. S., 218.

How then stands the case at bar?

From the report of the referee we find that James Edward Murray, at the time of the death of his father, who was his surviving parent, resided with his grandfather in Huron county, where his father died, and that he continued for a time after his father's death to reside with said grandfather, who was his natural guardian.

He was then, in law, domiciled in Huron county, with his grandfather, and while his grandfather lived the child's domicile could be changed only by the change of his grandfather's domicile; at least, no one not the natural guardian of the child could change its domicile by removing it to another county.    26 N. Y. Supplement, 606.

In this case the grandfather is still living and is the natural guardian, and the aunt was not the natural guardian, and the grandfather not having changed his domicile to this county the domicile of said James Edward Murray was not changed by his being brought to Lorain county by his aunt; and the Probate Court of Lorain County was without jurisdiction to appoint a guardian for him on December 9, 1904.

There is a finding in the report, in reference to the domicile of the father at the time of his death, which, if I were permitted to consider the bill of exceptions in this case, I would find to be incorrect; but in the view I take of it, that is of little importance, so long as the referee found that the father was not a resident of Lorain county at the time of his death.

The report as to matters of fact alone, that is, primary facts, will be confirmed, but the referee's conclusions of law and called by him conclusions of fact are not approved, and the decree

based upon the primary facts found by the referee, is that said guardian be removed because the Probate Court of Lorain County had no jurisdiction to appoint her.

I feel as the probate judge and the referee felt, that the person appointed guardian in this case is a proper person, and that the best interests of the child would be conserved by permitting the child to remain in the home of said guardian; but the question presented by this case is purely one of jurisdiction, and what would be best for the child can not change the law, which seems to me to be plain and to demand the decree I have entered.

*G. A. Resek, Clayton Chapman* and *P. H. Moroney,* for plaintiff.

*E. G. & H. C. Johnson* and *Lee Stroup,* for defendant.