PARK BEVERAGE CO., etc., t/a MARYLAND BEVERAGE CO. *v.* GOEBEL BREWING CO., etc.

[No. 106, October Term, 1950.]

*Decided March 15, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Harry E. Dyer, Jr.,* with whom were *Brown and Dyer* on the brief, for appellant.

*Benjamin C. Howard* and *Harrison L. Winter,* with whom was *Brodnax Cameron* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Harford County in a case in which the Goebel Brewing Company, a non-resident corporation, had been sued by appellant, and an attempt had been made to subject it to the jurisdiction of the court by service on the State Tax Commission, under the provisions of Article 23, Sec, 111. A motion was made by appellee to quash the writ of summons and to enter a judgment of *non pros,* and, after a hearing, this motion was granted, and a judgment of *non pros* entered, from which this appeal is taken.

The question involved is whether the defendant is subject to the jurisdiction of the Maryland courts. The claim for jurisdiction is made under Article 23, Sec. 119(d). This is an enlargement of the prior sub-sections which confer jurisdiction in cases where a foreign corpo-

ration is, or has been, doing business in the State. Subsection (d) reads as follows: "Every foreign corporation shall be subject to suit in this State by a resident of this State or by a person having a usual place of business in this State on any cause of action arising out of a contract made within this State or liability incurred for acts done within this State, whether or not such foreign corporation is doing or has done business in this State." It is said to be unique among the laws of the various states. (3 Maryland Law Review 35, 38 Columbia Law Review, p. 1060) It has never been before this court, but it has been before the U. S. District Court in two cases.

In the case of *Edgewater Realty Co. v. Tennessee Coal, Iron & Railroad Co.*, D. C. 49 F. Supp. 807, Judge Coleman had before him the question whether a defendant was doing business in the state, and he decided that it was. He then said that in view of that conclusion, it was unnecessary for him to consider Sec. 119(d). However, he said it was difficult for him to see how the broad provisions in the section could be upheld in the face of the requirements for due process. In a later case, *Johns v. Bay State Abrasive Products Co.*, D. C. 89 F. Supp. 654, Judge Chestnut passed upon the section and held one of the defendants in a tort case under it.

The section is made applicable to both contract cases and tort cases. The case before us is alleged to arise out of a contract made within this State. The appellee contends, first, that there was no contract made within the State, and second, that Sec. 119(d) cannot be applied in Maryland without constituting an unlawful burden on interstate commerce, and a denial of due process of law. We will not have to consider the second proposition if the first is correct, and therefore we direct our attention at once to the facts.

The declaration in the case which, curiously enough, is not printed by either party in its appendix, although it is important in showing what the suit is about, alleges that the plaintiff, in February, 1948, entered into an

agreement with the defendant for the purchase of a carload of Goebel Beer which was delivered to the plaintiff at Havre de Grace on or about March 2nd, and that following this delivery, another carload was ordered by the plaintiff which was delivered at Havre de Grace on the 28th of March, 1948. The plaintiff was conducting a beer distributing business in Harford and Cecil Counties, and it alleges that all of the cases of beer included in these two shipments were totally spoiled and ruined and unfit for consumption because the bottles were defectively capped and sealed. The suit is for the loss of the beer and loss of good will.

The proof shows that a Mr. Rheaume, the agent of the defendant, came to Havre de Grace to talk to Mr. Jasper, the president of the appellant. The latter testified that he was then and there offered the distributorship of Goebel Beer in Cecil and Harford Counties, pending the usual investigation of credit, but that at that time nothing definite could be decided upon until the brewery had made its investigation. He said that there was no definite understanding except of the fact that if the investigation proved all right, appellant would be the distributor. Rheaume said that he got full information from Jasper on his trip to Havre de Grace, returned to Philadelphia with it, and mailed it to the main office in Detroit. Sometime after that, having heard nothing further, and having been advised that there might be some difficulty with his credit, Jasper suggested some arrangements might be made with regard to a liquor store in Wilmington. Apparently something of the kind was done, because, two or three weeks after that, the main office in Detroit called Rheaume in Philadelphia and said they were willing to ship to appellant. Rheaume then called Jasper and told him he had received the O.K. from Detroit. All of the communication between Rheaume and Jasper was done over the telephone between Philadelphia and Havre de Grace, except the initial visit. Appellant apparently ordered the first carload of beer through the Philadelphia office, and the second by writing

or telephoning to Detroit. The beer was delivered on the freight platform in Detroit and the prices were f.o.b. Detroit. The shipments were billed from Detroit to Havre de Grace and the bills were payable in Detroit.

In this state of the evidence, it is quite clear that no final arrangement was made at the time of the meeting in Havre de Grace, and that even after appellant's credit was approved, there was no obligation on him to buy beer, so there was no contract between the parties at that time. The first contract was the order of the first carload which was received in Detroit, the carload being delivered to the appellant in Detroit and paid for in Detroit. The same thing is true of the second. Under these circumstances, there was no contract whatever made by the appellee within the State of Maryland, and, therefore, the Circuit Court for Harford County had no jurisdiction to entertain a suit against it, under the provisions of Sec. 119(d).

In view of this conclusion, it becomes unnecessary for us to consider any question involving the validity or constitutionality of Sec. 119(d), as it is not applicable to this case. Of course, there is no question that the appellee was not doing business in the State under the other provisions of Sec. 119 of Article 23.

*Judgment affirmed with costs.*