No. 44,952

Flora M. Woodring, *Appellant,* v. Charles William Hall, *Appellee*

(438 P. 2d 135)

Opinion filed March 9, 1968.

*Calvin McMillan,* of Wichita, argued the cause, and *Robert W. Kaplan,* of Wichita, was with him on the brief for appellant.

*Thomas A. Wood*, of Wichita, argued the cause, and *Paul V. Smith, Douglas E. Shay, William C. Farmer, Leo R. Wetta, James R. Schaefer* and *Larry L. Witherspoon*, all of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: At issue is the construction and application of K. S. A. 60-308 (*b*) of the Code of Civil Procedure effective January 1, 1964, as it authorizes the entry of judgments *in personam* on personal service of summons outside the state of Kansas in enumerated cases. The parties state the principal questions for decision are (1) whether the loaning of money by a relative for living and educational expenses constitutes "the transaction of any business within this state" as contemplated by 60-308 (*b*) (1), and (2) whether the statute may be constitutionally applied retroactively.

The parties will be referred to as they appeared in the court below.

On March 29, 1965, the plaintiff commenced this action in the district court and her claim for relief stated the defendant was indebted to her in the sum of $3,766.04 "for money lent by plaintiff to defendant from December 1, 1952, through April 3, 1962, which indebtedness was acknowledged in writing by said defendant in the sum of $3,100.00 on the 17th day of April, 1962." The written acknowledgment of the indebtedness was alleged to be contained in a journal entry of divorce dated April 17, 1962, wherein the defendant in this action, Charles William Hall, was the plaintiff and Betty Arlene Hall was the defendant. The court's findings in the journal entry of divorce were that both the plaintiff and defendant were residents in good faith of Wyandotte County, Kansas, for more than one year prior to the filing of the action for divorce, and that the decree of divorce was granted to the defendant, Betty Arlene Hall. A copy of the journal entry of divorce was attached to the plaintiff's petition, marked Exhibit "A" and made a part thereof.

Personal service of summons was had upon the defendant in Harris County, Houston, Texas, on April 22, 1965, pursuant to 60-308 (*b*) (1), and due return thereof was made to the district court.

On June 21, 1965, no answer or other responsive pleading having been filed by the defendant, the plaintiff proceeded to take a default judgment against the defendant in the sum of $3,766.04, plus interest and costs, and gave him due notice thereof.

On June 17, 1966 approximately twelve months later, the defendant filed a motion to set aside the plaintiff's default judgment, to quash the service of summons alleged to have been made on him in the state of Texas on April 22, 1965, and to dismiss the action, for the reason that the district court lacked jurisdiction of the person of the defendant and that the judgment was void.

The motion was heard on the affidavit of the defendant and the written stipulation of the parties. The affidavit stated in substance that the defendant had been a bona fide resident of Harris County, Texas, since July, 1962, and he had not been a resident or domiciled in the state of Kansas since that time. The stipulation recited the defendant was a resident of the state of Kansas from December 1, 1952, through April 3, 1962, when the plaintiff loaned money to the defendant; that during that period, the plaintiff was the defendant's mother-in-law and that this action was brought to recover money loaned by her to the defendant in the state of Kansas for living expenses and expenses of his education at the Kansas University Medical Center.

On November 17, 1966, the district court, after hearing argument of counsel and considering their respective briefs, concluded the defendant's motion, "is now hereby sustained for lack of jurisdiction, it being found that the transaction concerned does not constitute the 'transaction of any business' within this State and within the meaning of K. S. A. 60-308 (*b*)."

In harmony with that conclusion, the district court set aside the default judgment entered on June 21, 1965, against the defendant, quashed the service of summons alleged to have been made on him in the state of Texas on April 22, 1965, and dismissed the action. This appeal followed.

As indicated, this controversy focuses upon 60-308 (*b*) (1). Except for a few minor changes in language, subsection (*b*) and subparagraphs (1), (2), (3) and (4) thereof were lifted bodily from the Illinois Civil Practice Act of 1955 (Smith-Hurd, Ill. Annot. Statutes, Ch. 110, § 17), by the committee which drafted our Code of Civil Procedure. The provision was wholly new and was based on "the test of due process laid down in *Internat. Shoe v. Washington*, 326 U. S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A. L. R. 1057." (Smith-Hurd, *op. cit., supra*, Joint Committee Comments, p. 164.) Section 60-308 reads in part:

"(*b*) . . . Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(1) The transaction of any business within this state . . ."

. . . . . . . . . . . .

"Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this subsection (*b*) of this section, may be made by personally serving the summons upon the defendant outside this state, as provided in subsection (*a*) of this section, with the same force and effect as though summons had been personally served within this state, but only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this paragraph."

This court has recognized and applied the rule that a statute adopted from another state carries with it the construction placed upon it by the courts of that state. (*McHenry v. Hubbard,* 156 Kan. 415, 420, 134 P. 2d 1107.) However, the rule is not absolute and is subject to exceptions not here applicable. See *State v. Hill,* 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750. Prior to our adoption of the Illinois statute, the Illinois Supreme Court sustained the constitutionality of the statute in *Nelson v. Miller,* 11 Ill. 2d 378, 143 N. E. 2d 673, decided June, 1957, with respect to its provision authorizing extraterritorial service upon nonresident persons and authorizing the entry of judgment *in personam* upon personal service of summons outside the state. While the *Nelson* case involved the commission of a tortious act within the state of Illinois by a nonresident of that state (60-308 [*b*] [2], not here involved), we think its reasoning sustaining the Civil Practice Act is applicable to "the transaction of any business within this state" (60-308 [*b*] [1]), and we adopt that construction with respect to the constitutionality of the statute. In the opinion it was said:

". . . The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (*International Shoe Co. v. Washington,* 326 U. S. 310, 319 [1945]), but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense.

"The change that has occurred is made most manifest by the decision in *International Shoe Co. v. Washington*, 326 U. S. 310 (1945). There the court said: 'Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the terirtorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. (*Pennoyer v. Neff*, 95 U. S. 714, 733.) But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice"' (326 U. S. at 316.) The court added that the demands of due process 'may be met by such contacts of [the defendant] with the state of the forum as make it reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought there. An "estimate of the inconveniences" which would result to the [defendant] from a trial away from its "home" of principal place of business is relevant in this connection.' (326 U. S. at 317.) While the precise question related to the jurisdiction of the courts of the State over a foreign corporation, it is clear that the general principle underlying the decision applies equally to jurisdiction over nonresident individuals." (pp. 384, 385.)

Section 60-308 reflects a conscientious state policy to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the Fourteenth Amendment to the Constitution of the United States. (4 Vernon's Kansas Statutes Annotated, Code of Civil Procedure [Fowks, Harvery, Thomas], § 60-308, pp. 87-97; Cleary and Seder, Extended Jurisdictional Bases, 50 Nw. U. L. Rev. 599.) In order to satisfy due process there must be minimum contacts with the forum state plus adequate notice of the claim against the individual defendant and full opportunity to appear and be heard in his defense. There is no doubt that 60-308 affords adequate notice, since there is provision for personal service, and "[t]here would seem to be no better notice than a summons personally served on a defendant." (Smith-Hurd, *op. cit., supra,* pp. 164, 165; 4 Vernon's, *op. cit., supra,* p. 86.)

To subject an individual defendant to a judgment *in personam* if he be not present within the territory of the forum state, he must have the "minimum contacts" enumerated in the statute, and whether due process is satisfied depends upon the quality and nature of the activities of the defendant, which must be determined on a case by case basis. In *Koplin v. Thomas, Haab & Botts,* 73 Ill. App. 2d 242, 219 N. E. 2d 646, it was said:

"Essentially the same factors which enter into the determination that section 17 [60-308 (*b*] authorizes the exercise of jurisdiction are involved in deciding whether the exercise of jurisdiction is constitutionally valid. Perhaps the basic factor is the quantum of the defendant's contact with the forum State. In deciding whether the activities of the defendant have a substantial connection with the forum State, the relevant inquiry is whether the defendant engaged in some act or conduct by which the defendant may be said to have invoked the benefits and protection of the law of the forum State. Hanson v. Denckla, 357 U. S. 235 (1958) . . ." (pp. 254, 255.)

As noted by the Supreme Court of the United States in *Hanson v. Denckla,* 357 U. S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228, rehearing denied 358 U. S. 858, 3 L. Ed. 2d 92, 79 S. Ct. 10, we have come far from the doctrine of *in personam* jurisdiction enunciated in *Pennoyer v. Neff,* 95 U. S. 714, 733, 24 L. Ed. 565. However, as stated in the *Hanson case,* "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts."

We are of the opinion that 60-308 as construed and applied by this court in *Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 428 P. 2d 128, meets the test of due process laid down in *Internat. Shoe Co. v. Washington,* supra, and reaffirmed in *Travelers Health Assn. v. Virginia,* 339 U. S. 643, 647, 94 L. Ed. 1154, 1161, 70 S. Ct. 927, and *McGee v. International Life Ins. Co.,* 355 U. S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199. Moreover, the statute is not materially different in substance from that with respect to K. S. A. 8-401 considered and sustained by this court in *Jones v. Garrett,* 192 Kan. 109, 386 P. 2d 194, authorizing process against nonresident motorists who cause injury within the state.

We now turn to the defendant's contention that 60-308 (*b*) may not be constitutionally applied retroactively as to a cause of action which arose prior to its enactment. The defendant states in his brief, "[t]he cause of action alleged in this case arose not later than April 3, 1962, whereas the effective date of Section 60-308 (*b*) was January 1, 1964." (The date of April 3, 1962, evidently is intended to be the date the defendant became a nonresident of Kansas as disclosed in the parties' stipulation of facts.)

Insofar as the defendant's claim is based on the federal constitution it is without merit. Section 60-308 (*b*) does "not extend either to the destruction of an existing cause of action or to creation of a new liability for past events." (*Cohen v. Beneficial Loan Corp.,*

337 U. S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221, and *Ex parte Collett*, 337 U. S. 55, 71, 93 L. Ed. 1207, 69 S. Ct. 944.)

To the extent the defendant's claim is grounded on Kansas law, it is disposed of by several decisions construing and applying the Illinois Act which we adopted. In *Nelson v. Miller*, supra, the Supreme Court of Illinois quoted from the case of *Ogdon v. Gianakos*, 415 Ill. 591, 114 N. E. 2d 686, as follows:

". . . 'The law applicable in the State of Illinois is that there is no vested right in any particular remedy or method of procedure, and that, while generally statutes will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, nevertheless, when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. (Citations.) This statute embodies no saving clause as to existing litigation. It merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment. As a change which affects merely the law of procedure, there can be no valid objection to enforcing the existing cause of action under this new procedure.' . . ." (pp. 382, 383.)

See, also, *Sunday v. Donovan*, 16 Ill. App. 2d 116, 147 N. E. 2d 401, and *Duna v. National Bank of Austin*, 28 Ill. App. 2d 500, 171 N. E. 2d 802.

Our own cases are to the same effect. In *Jones v. Garrett*, supra, it was held:

" 'Procedure' is the machinery for carrying on the suit, including pleading, process, evidence, and practice, whether in the trial court, or in the processes by which causes are carried to appellate courts for review, or in laying the foundation for such review.

" 'Practice' is the form or mode or proceeding in courts for the enforcement of rights or the redress of wrongs, as distinguished from the substantive law which gives the right or denounces the wrong.

"Procedure or practice is the mode or proceeding by which a legal right is enforced, that which regulates the formal steps in an action or other judicial proceedings.

"The issuance or service of process is not what makes one a party to a suit; it is merely a step in obtaining jurisdiction of his person after he is a party to a suit.

"There is no vested right in any particular remedy or method of procedure." (Syl. ¶¶ 2, 3, 4, 5, 6.)

And in the opinion it was said:

"It is the law of this state that a statute which merely changes a remedy is not invalid, as there are no vested rights in any particular remedy. While

generally statutes will not be construed to give them retroactive application unless it appears that such was the legislative intent, nevertheless when a change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether or not the suit has been instituted, unless there is a saving clause as to existing litigation. . . . "(l. c. 115.)

See, also, *Beeler & Campbell Supply Co. v. Warren,* 151 Kan. 755, 100 P. 2d 700; *Ellis v. Kroger Grocery Co.,* 159 Kan. 213, 152 P. 2d 860; *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197, and *Teague v. George,* 188 Kan. 809, 815, 365 P. 2d 1087.

As noted, 60-308 contains no saving clause. The statute merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by its terms. As stated in the *Jones* case, the process section of the statute, "is certainly not a part of the law which creates, defines, or regulates rights." A statute which merely affects a remedy is not unconstitutional, although it is applied retroactively, and we think 60-308 is remedial in character and deprived the defendant of no vested right. There can be no valid objection to enforcing the plaintiff's claim for relief under the procedure provided in 60-308.

Did the district court have jurisdiction over the person of the defendant to render a valid judgment *in personam* against him? Collateral attacks upon judicial proceedings are never favored, and when such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void, but will be held to be valid. (*Head v. Daniels,* 38 Kan. 1, 15 Pac. 911; *Bradford v. Larkin,* 57 Kan. 90, 45 Pac. 69; *Eberhardt Lumber Co. v. Lecuyer,* 153 Kan. 386, 390, 110 P. 2d 757.)

The defendant's only inquiry must be limited to whether his borrowing of money under the facts disclosed by the petition and the stipulation of the parties constituted "the transaction of any business within this state." If answered in the affirmative, the intrinsic merits of the default judgment may not be inquired into, since the judgment was not void for want of jurisdiction over the person of the defendant. (*Vilm v. Hudson,* 167 Kan. 372, 375, 205 P. 2d 1021; *In re Estate of Johnson,* 180 Kan. 740, 308 P. 2d 100; *Green v. Bluff Creek Oil Company,* 287 F. 2d 66.)

The defendant makes no claim the concerned transaction constituted a gift, or, as indicated, that the plaintiff's claim for relief was prematurely brought. It is claimed only that the transaction in this case was a "personal transaction" and not the transaction of "business" within the meaning of 60-308 (*b*) (1). The defendant asserts that "business" should be construed according to the context and the approved usage of the word, and that the Legislature intended the word "business" to be used in its commercial sense. He argues that "the transaction of any business within this state" is not the equivalent of "any transaction within this state," and directs our attention to *Topeka v. Jones,* 74 Kan. 164, 86 Pac. 162, and *Gray v. Sedgwick County,* 101 Kan. 195, 165 Pac. 867, which he states holds that the word "business" is synonymous with "calling," "occupation," or "trade," and is defined as "any particular occupation or employment engaged in for a livelihood or gain." He contends that if the transaction in question is regarded as the transaction of "business," every personal transaction of any nature within the state could be the basis for a suit against a nonresident with service of process outside the state.

We are of the opinion 60-308 (*b*) (1) provides for jurisdiction on the facts of this case. While definitions of the word "business" are legion, to such an extent that those favorable to any view of any controversy may be found, we think the defendant's attempt to draw a distinction between "private" business and "commercial" business not only calls for a strict and limited construction of the statute, but completely disregards its clear and mandatory language.

The word "commercial" in the sense urged by the defendant, is merely explanatory of the word "business" and includes only a small part of our business activities. Moreover, the Legislature did not categorize "business" in component parts such as commercial business, personal business, private business, legal business, or corporate business. Indeed, the phrase "transaction of any business' itself is all encompassing and was used by the Legislature in its broadest legal sense and as intending to authorize the personal service of summons upon a corporate or individual defendant to the full extent of the due process clause. (*Koplin v. Thomas, Haab & Botts,* supra; *Sunday v. Donovan,* supra, p. 120; *Lurie v. Rupe,* 51 Ill. App. 2d 164, 201 N. E. 2d 158, cert. den. 30 Ill. 2d 627, cert. den. 380 U. S. 964, 14 L. ed 2d 154, 85 S. Ct. 1108.) See, also, *Toedman v. Nooter Corpora-*

*tion,* 180 Kan. 703, 308 P. 2d 138, and the quotation from 20 C. J. S. on p. 707; 5 Washburn L. J. pp. 246-248; 13 Kan. L. R. pp. 562-564.

It cannot be stated with exactitude what constitutes the "transaction of any business," but it may be stated that each case must turn on its own fact pattern. In a broad sense, "business" is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. (60-308 [*b*] [1]; *Insull v. New York World-Telegram Corporation,* 172 F. Supp. 615, 628; *Snow v. Johnston,* 197 Ga. 146, 28 S. E. 2d 270.) See *National Bank of America at Salina v. Calhoun,* 253 F. Supp. 346, 351, construing and applying the Kansas Civil Code of Procedure. Cases construing Section 17 (1) of the Illinois Civil Practice Act are to the effect that jurisdiction under the statute has not been restricted to those cases alone where its language literally describes the activities of the defendant. See *Koplin v. Thomas, Haab & Botts,* supra; *Gray v. Amer. Radiator & Sanitary Corp.,* 22 Ill. 2d 432, 176 N. E. 2d 761, as applied in the *Koplin* case, *supra,* p. 254, and *Koplin v. Saul Lerner Co., Inc.,* 52 Ill. App. 2d 97, 201 N. E. 2d 763. See, also, Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U. Ill. L. Forum 533.

To sustain the defendant's contention would be the equivalent of holding that 60-308 (*b*) (1) is applicable only to corporations, partnerships or individuals regularly engaged in the business of making loans of money. The statute may not be given a restrictive interpretation based upon the Kansas "doing business" cases (See 2 Hatcher's Kansas Digest, Corporations, § 142, 143, pp. 96, 97), or upon the Kansas "business" cases relied upon by the defendant. The phrase "doing business" is not to be confused with the "transaction of business" under minimal contacts required by the due process clause. This is the construction given the Illinois Statute by the Illinois courts which hold that the new "transacting business" concept is broader and not limited to the more restrictive concept of "doing business" cases. In *Lurie v. Rupe,* supra, it was said:

". . . The test now is not the old 'doing business' test but merely whether 'minimum contacts' are present sufficient to allow the forum to assume jurisdiction. Grobark v. Addo Machine Co., Inc., 16 Ill. 2d 426, 431, 441, 158 N. E. 2d 73 (1959) . . ." (p. 171.)

In *Cotton v. L. & N. R. R. Co.*, 14 Ill. 2d 144, 152 N. E. 2d 385, it was said:

". . . It has yielded to realistic considerations of the fairness of permitting the foreign corporation or the nonresident individual to be sued in the forum State. (International Shoe Co. v. Washington, 326 U. S. 310, 90 L. Ed 95; Nelson v. Miller, 11 Ill. 2d 378.) Under this new approach to problems of jurisdiction the doctrine of *forum non conveniens* will assume increased importance, and its flavor of procedural due process, already strong, will be enhanced. . . ." (p. 177.)

In *Haas v. Fancher Furniture Co.*, 156 F. Supp. 564, the federal court interpreted and applied the Illinois Civil Practice Act, and said:

"The words of subsection (*a*) of Section 17 cannot be given a restrictive interpretation based upon the old Illinois 'doing business' cases. The subsection speaks of 'transaction of any business within this State' not of 'doing business' here. There are proper limits to the process of fitting single events into the word 'transaction' (see Erlanger Mills v. Cohoes Fibre Mills, 4 Cir., 239 F. 2d 502; Park Beverage Co. v. Goebel Brewing Co., 197 Md. 369, 79 A. 2d 157), but it seems clear from the decision in Nelson v. Miller *supra*, that Illinois courts would claim jurisdiction over the corporate defendants in this case under Section 17 (*a*), where, as here, the cause of action arises out of a contract entered into by defendants within this State and one which was to be performed wholly within this State. . . ." (p. 567.)

See *Sunday v. Donovan*, supra, where it was held that extraterritorial service was properly had as "the transaction of any business" under Section 17 (1) (*a*) to recover unpaid wages and money loaned to the defendant in Illinois. See, also, *Hunter-Hayes Elevator Co. v. Petroleum Club Inn Co.*, 77 N. M. 92, 419 P. 2d 465, which construed and applied the New Mexico statute adopted from the state of Illinois. (Smith-Hurd, *op. cit., supra.*)

The defendant asserts the Illinois Supreme Court has adopted the view that the transaction of business as used in Section 17 (1) (*a*) means "business in the commercial aspect," and relies on *Mroczynski v. McGrath*, 34 Ill. 2d 451, 216 N. E. 2d 137. The case is not helpful to him. It merely holds that the establishment of a marital domicile and the birth of a child in Illinois does not constitute the transaction of business within the meaning of the statute, and in an action brought by the incompetent son's conservator against a foreign executor of his father's estate to declare his will invalid, where the father had permanently left Illinois upon aban-

donment of his family over 25 years before his death, the trial court did not err in dismissing the action for lack of jurisdiction.

The instant action was brought to recover money loaned by the plaintiff in Kansas to the defendant for living expenses and expenses of his education at the University of Kansas School of Medicine. No one isolated transaction was involved; the money was loaned through a series of transactions extending over a period of ten years. During that time the defendant resided in Kansas with his wife and family and he was awarded a medical degree from a university of this state. He used the courts of Kansas to dissolve the marital relationship with his wife and in that proceeding acknowledged in writing his financial obligation to the plaintiff. Considering the quality and nature of the defendant's activities, it may be said he invoked the benefits and protection of the laws of this state as contemplated in *Hanson v. Denckla*, supra, and we have no hesitancy in concluding that the loaning of money as disclosed by the record with a corresponding promise to repay constituted the "transaction of business" within the meaning of 60-308 (*b*) (1).

This state has an interest in supplying an effective means of redress for its residents who loan money to persons who become nonresidents, under the circumstances disclosed by this record. Moreover, the state has an additional interest in providing a forum for this action. The law creating the claim for relief is that of Kansas. Both parties resided in this state when the loans were made, and the obligation to repay the indebtedness was to be performed in Kansas in accordance with the defendant's written acknowledgment. (James, Civil Procedure, § 12.10, p. 648.) Nor do we think it was unfair to summons the defendant into Kansas to answer the plaintiff's petition, and, since he defaulted, it is unnecessary to estimate the inconvenience which would have resulted to him, if any, had there been a trial. Not only did the transaction upon which the action was based have substantial connection with Kansas, but the defendant's contacts in this state were more than minimal and were such that the maintenance of this action did not offend traditional notions of fair play and substantial justice.

In view of the foregoing, the judgment of the district court is reversed and set aside. The case is remanded with directions to the district court to reinstate the judgment in favor of the plaintiff.