**DOYN AIRCRAFT, INC., a corporation, Plaintiff-Appellee,**

v.

**James C. WYLIE and Atlas Aviation Sales, Inc., a corporation, Defendant-Appellant.**

**No. 228–70.**

United States Court of Appeals, Tenth Circuit.

June 4, 1971.

Donald L. Martin, Houston, Tex., for defendant-appellant.

Gerald L. Michaud, Wichita, Kan. (Bradley Post, Wichita, Kan., on the brief), for plaintiff-appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and LANGLEY, District Judge.

HILL, Circuit Judge.

Doyn Aircraft brought suit against Wylie to recover for breach of contract, fraud, and for conversion of seventeen Supplemental Type Certificates (STC's).[1] After trial to the court without a jury, judgment was entered in Doyn Aircraft's favor awarding $32,000 for breach of contract, $3,000 for expenses in securing new STC's, and $15,000 as reasonable attorney's fees. The sum of $6,043.77 due and owing from Doyn Aircraft to Wylie was offset against the judgment, making the net recovery $43,596.23. Wylie appeals.

Doyn Aircraft is a Kansas corporation with its principal place of business in Wichita; Wylie is a Texas citizen. In August, 1965, Wylie visited Means, the president of Doyn Aircraft, in Wichita to investigate the possibility of becoming a distributor for airplane conversion kits manufactured by Doyn Aircraft under the authority of the seventeen STC's. It was known from the outset that Doyn Aircraft was in financial difficulties, and that financing would be needed to pursue the proposed venture. Negotiations continued between the parties until October 16, 1965, when Means traveled to Houston and executed a distributorship contract.

Wylie signed the agreement as trustee for a corporation that would be Doyn Aircraft's exclusive distributor. The distributor was to purchase a minimum of eight conversion units per month, commencing January 1, 1966. Upon thirty days' notice either party could

---

1. STC's are issued by the Federal Aviation Administration for the purpose of allowing modification work to aircraft. They do not, however, grant exclusive rights since any number of people can acquire an STC for the same type of modification.

terminate the contract for designated reasons, and if a dispute arose over the meaning of the contract terms, Texas law would govern.

To provide financing for the venture, Means simultaneously executed a promissory note in the principal sum of $28,000 to the order of Wylie. Appellant then gave Means a $22,460 check which represented the cash proceeds of the note. After Means left for Kansas, Wylie became unsure of the agreement and stopped payment on the check. After more fully investigating the financial and legal status of Doyn Aircraft, Wylie met with the other parties in Wichita on November 4 and 5, 1965, in an attempt to iron out the difficulties and reconstruct the details of the venture.

The precise details as to what occurred with regard to the distributorship contract are clouded by faulty and conflicting memories. Wylie and his lawyer have no recollection that a new contract was negotiated nor that the "Houston contract" was altered. The Doyn Aircraft witnesses recall that the "Houston contract" was retyped with changes made, resulting in a new contract. There seems to be no dispute that Wylie agreed to send Means a $25,000 check, less the $6,043.77 debt, once he returned to Houston; that the STC's were transferred to Wylie as security for the loan; that an option to repurchase was executed; and that Wylie agreed that after he returned to Houston, he would execute an exclusive use agreement to allow Doyn Aircraft to continue manufacturing the conversion units. Immediately following the meetings, Wylie caused the STC's to be registered in his name.

Once Wylie returned to Houston with the STC's in his name, he refused to send Means the check, he refused to execute the exclusive use agreement, he refused to return the STC's which he held only as security for the loan he refused to negotiate and kept them instead as security for the $6,043.77 debt; he refused to place any orders with Doyn Aircraft, and he formed Atlas Aviation Sales, Inc., the anticipated corporation, and allowed that entity to manufacture the conversion kits under the authority of the seventeen STC's. Means attempted to halt Wylie's unauthorized use of the STC's but was unsuccessful. Eventually Means was successful in getting other STC's from the FAA to permit Doyn Aircraft to continue manufacturing the conversion kits.

This action was originally instituted in the Kansas state courts but was removed to federal court by Wylie. From the outset, and on appeal, appellant has maintained that the federal court in Kansas is without subject matter and in personam jurisdiction. In the petition for removal, without waiving the right to contest the issue of personal jurisdiction, Wylie stated that he had been personally served in Houston, Texas; that the matter in dispute exceeds $10,000; that Doyn Aircraft is a Kansas corporation with its principal place of business in that state; and that Wylie is a Texas citizen.

Federal subject matter jurisdiction is conferred here by 28 U.S.C. § 1332. The removal statute, 28 U.S.C. § 1441, generally allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Original jurisdiction is here based on diversity of citizenship, which Wylie has, by his petition for removal, tacitly admitted. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between * * * citizens of different States * * *." 28 U.S.C. § 1332(a).[2]

2. 28 U.S.C. § 1332(c) reads: "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business * * *."

■ The brunt of appellant's attack on the power of the Kansas federal court to try the case focuses on whether it was vested with in personam jurisdiction. The resolution of that question, it is agreed, depends upon the application of the Kansas long-arm statute. *See* Walker v. Field Enterprises, Inc., 332 F.2d 632 (10th Cir. 1964). K.S.A. 60–308(b) generally provides that a nonresident submits to the jurisdiction of the Kansas courts as to a cause of action which arises from his transacting business within the state.

The statute is based on the minimum contacts test laid down in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), "and whether due process is satisfied depends upon the quality and nature of the activities of the defendant, which must be determined on a case by case basis." Woodring v. Hall, 200 Kan. 597, 438 P. 2d 135, 141 (1968). Before jurisdiction may be entertained over a nonresident on the basis of transacting business within the state, three basic factors must coincide: "(1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice * * *." White v. Goldthwait, 204 Kan. 83, 460 P.2d 578, 582 (1969).

■ Wylie argues that since the distributorship agreement was executed in Texas and was to be governed by the laws of that state, he has not transacted business in Kansas so as to satisfy the minimum contacts standard. Thus the Kansas courts have no basis for asserting personal jurisdiction over him regarding any breach of the distributorship contract. The connection, of course, hinges on the assertion that Wylie did not transact business during the November 4 and 5 visit to Wichita. The trial court overruled this contention on a motion to dismiss for want of jurisdic-

tion, and we are impelled to the same conclusion.

Wylie purposefully transacted business within the state. In Woodring v. Hall, 438 P.2d at 144, the Kansas Supreme Court said: "In a broad sense, 'business' is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires."

Appellant first traveled to Kansas in August, 1965, in an attempt to begin negotiations for an agreement whereby he would distribute conversion kits for Doyn Aircraft. Even if that contact is insufficient, Wylie spent November 4 and 5 in Wichita attempting to perfect the abortive Houston agreement. The trial court found that at the Wichita meeting the parties reaffirmed the Houston contract, in effect perfecting and implementing the original agreement. Although there is a factual dispute on this point and testimony of the witnesses diverges, there is enough evidence supporting the trial court's finding to preclude a holding of clear error. Moreover, the loan by which the venture was to be financed was renegotiated, an agreement regarding the transfer of the STC's was reached, and the terms of an exclusive use agreement were drawn. We conclude that these acts were "business transactions" in the sense that Wylie was trying to effectuate a purpose to improve his economic conditions and satisfy his desires, and that in so doing he purposely availed himself of the privilege of conducting activities within the State of Kansas.

Having sustained the trial court's finding that the distributorship contract was perfected in Kansas, and that the loan agreement, along with the transfer of the STC's, was effectuated in the forum state, it follows that the claims for relief flow out of the same "business transactions". And considering the quality, nature and extent of the activities in Wichita in August and November,

1965, and considering the benefits and protections of the laws of the State of Kansas to all litigants, we are unable to conclude that traditional notions of fair play and substantial justice are affronted. The trial court properly assumed in personam jurisdiction over Wylie as to the distributorship contract, the loan agreement, and the exclusive use agreement.

The second point raised by appellant urges that the trial court erred in awarding attorney's fees to appellee. The argument is that appellee "is restricted in its right to recovery of attorney's fees to that portion of its suit brought directly on the [distributorship] contract." The dissension originates from appellant's misapprehension that attorney's fees were allowed on the causes of action arising out of the other contracts. This is resolved by a reading of the trial court's memorandum which allows the attorney's fees "as provided by Paragraph 15 of Exhibit 1 [the distributorship contract]." We find no indication that the award had any other source of support.

■ Another part of this argument is that assuming the propriety of awarding attorney's fees, appellee failed to maintain its burden of proving the reasonableness of the fee. The contention is premised on Texas law which does require a tender of proof of reasonableness. Great American Reserve Insurance v. Britton, Tex., 406 S.W.2d 901 (1966). Kansas law governs this issue. "Upon questions of the burden of proof, which are substantially within *Erie* rather than procedural, the law of the state in which the federal court is held * * * must be applied by the federal court." 1A Moore's Federal Practice, ¶ 0.311[1] at 3409.

■ In Kansas, if the case is a proper one for assessment of attorney's fees, such an award by the trial court does not depend upon expert testimony as to the value of such legal services. If there is no evidence as to the reasonableness of the attorney's fees, the trial court may apply its own knowledge and professional experience in determining the value of the services rendered. Wolf v. Mutual Benefit Health and Accident Assn., 188 Kan. 694, 366 P.2d 219, 234 (1961); Wollard v. Peterson, 145 Kan. 631, 66 P.2d 375, 378 (1937); Elliott v. Crystal Springs Oil Co., 106 Kan. 248, 187 P. 692, 693 (1920). We have been advised of no reason why, if the law allows the trial judge to set the amount, the award of attorney's fees should be altered, so the amount is sustained.

■ Wylie's third point is that he should not be personally liable upon the distributorship agreement since he signed it as trustee for a corporation to be formed. Whether we use appellant's argument or follow the reasoning of the trial court, Wylie is personally liable. The main thrust of his argument is that under Texas law, where his corporation was formed, a promoter incurs no personal liability if a contract is made on behalf of a corporation to be formed, provided the third party agrees to look to the corporation and not the promoters for payment. Schwedtman v. Burns, 11 S.W.2d 348 (Tex.Civ.App.1928); Weeks v. San Angelo National Bank, 65 S.W.2d 348 (Tex.Civ.App.1933). The fallacy in the argument is in the fact that the contract will not support Wylie's assertion that appellees were not charging him with responsibility in the performance of the agreement. Paragraph 8 of the distributorship contract provides: "It is expressly agreed and understood that this contract is being made by JAMES C. WYLIE for the benefit of a corporation to be formed, and *all rights hereunder of the Distributor are assignable by the said WYLIE, and upon such assignment and assumption of liabilities by the assignee, the said WYLIE shall not have any liability hereunder.*" (emphasis added). Appellant admits that he never assigned the contract rights to his corporation. That failure fastens liability squarely on him as provided in the agreement.

■ The trial court approached the problem from the standpoint that Wylie's corporation (Atlas Aviation, Inc.) was the alter ego of Wylie and served merely as a business conduit for him. The doctrine of alter ego "fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business, such liability arising from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. Under it the court merely disregards corporate entity and holds the individual responsible for his acts knowingly and intentionally done in the name of the corporation." Kilpatrick Bros., Inc. v. Poynter, 205 Kan. 787, 473 P.2d 33, 42 (1970). In the dealings here relevant, the identities of the individual and the corporatiom merged, and to segregate them as appellant desires would cause an inequitable result. We cannot detect clear error in the trial court's findings.

Appellant finally alleges that the trial court erred in failing to compel appellee to elect its remedy. One inconsistent remedy was voluntarily abandoned prior to the trial. And the trial court obviously found that the remainder were not inconsistent. *See*, Waddell v. Blanchard, 171 Kan. 280, 232 P.2d 467 (1951). Upon a perusal of the pleadings, the pre-trial conference and pre-trial order, as well as the trial court's memorandum, the lower court's action must be sustained.

■ In concluding, we note appellee's charges that the appendix submitted by appellant is wholly insufficient. The fifteen page appendix to appellant's brief is an obviously inadequate attempt to accurately represent a record which consists of over 260 pages of motions, orders, exhibits, etc.; over 365 pages of depositions; nearly 100 pages of transcript from the pre-trial conference; and a 527-page transcript of the trial. To assure a meaningful review of the issues on appeal, we have requested and received from the trial court the eight-volume record. Thus the decision herein rests on a consideration of the eight-volume record and appellant's appendix.

Affirmed.