## Sabatini v. Weber-Harris Ford 4M Inc.

C.P. of Crawford County, no. D.S.B. 2009-749.

*Shawn P. McClure,* for plaintiff.
*Gery T. Nietupski,* for defendant.

SPATARO, *J.,* February 12, 2010—Plaintiff, Matt C. Sabatini, filed an action in the District Court of Shawnee County, Kansas, seeking to recover the sum of $1,801.01 in damages in connection with a 2002 Dodge Ram pickup truck that he purchased from the defendant, Weber-Harris Ford Lincoln Mercury Inc.[1] Weber-Harris is an automobile dealership, located on Baldwin Street in Meadville, Pennsylvania. Sabatini is a resident of Topeka, Kansas. Sabatini successfully prosecuted his suit against Weber-Harris to judgment and then filed a praecipe to file foreign judgment in the amount of $1,600 with the prothonotary of Crawford County on August 3, 2009. Weber-Harris filed a motion to vacate the judgment, contending that judgment should be stricken because the District Court of Shawnee County, Kansas did not have personal jurisdiction over Weber-Harris.

---

1. The defendant in the caption is identified as Weber-Harris Ford 4M Inc., when no such entity exists. The parties have agreed that the proper name of the defendant is Weber-Harris Ford—Lincoln Mercury Inc.

The origin of this dispute goes back to August 2007, when Sabatini learned of the sale of a 2002 Dodge Ram pickup truck on Weber-Harris' web site. He contacted Weber-Harris to express his interest in the vehicle. Weber-Harris later mailed a contract of sale to Sabatini, which set forth the terms of the transaction. The vehicle was to be sold "as is," although Weber-Harris did warrant that the vehicle had no previous or existing collision repairs, nor any existing damage or interior burns. Sabatini signed the sales agreement and then sent it back to Weber-Harris. Upon receipt of the purchase price, the vehicle was available for delivery. Sabatini "contracted with a carrier to pick up the vehicle in Pennsylvania and deliver it to Kansas." (Plaintiff's reply to defendant's motion to vacate, averments 6 and 7.)

Weber-Harris asserts that its limited amount of involvement within the State of Kansas is insufficient to vest the District Court of Shawnee County with jurisdiction and that the judgment entered in the Kansas Court is unenforceable in Pennsylvania. Sabatini asserts that Weber-Harris submitted itself to the jurisdiction of the State of Kansas by advertising the sale of the pick-up truck on the Internet, knowing that citizens of Kansas were within the pool of potential buyers; furthermore, that sending the contract to Sabatini demonstrated the intention of Weber-Harris to submit to personal jurisdiction in the courts of Kansas.

We begin by examining the pertinent provisions of the Uniform Enforcement of Foreign Judgments Act. 42 Pa.C.S. §4306. This Act is designed to provide compliance with the "constitutional mandate that each state give

full faith and credit to judgments transferred from sister states" and permits a "simplistic and systematic transfer of money judgments from one state's court to another." *Commonwealth Capital Funding Inc. v. Franklin Square Hospital,* 423 Pa. Super. 149, 153, 620 A.2d 1154, 1156 (1993). (footnote omitted)

The Uniform Enforcement of Foreign Judgments Act requires the filing of foreign judgments properly entered in a foreign sister state. Such judgments shall be subject to the "same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth." 42 Pa.C.S. §4306(b). The validity of the judgment in this Commonwealth, and enforcement of the judgment, requires that the sister state had proper jurisdiction. *Commonwealth Capital Funding Inc., supra,* see also, *RECO Equipment Inc. v. John T. Subrick Contracting Inc.,* 780 A.2d 684 (Pa. Super. 2001*), appeal denied,* 567 Pa. 763, 790 A.2d 1018 (2001). We are, therefore, required to examine Kansas law to determine whether the courts of Kansas had jurisdiction over Weber-Harris.

In Kansas, a two-step analysis is required to determine whether there is specific, personal jurisdiction over a nonresident;

(1) Whether the long arm statute in Kansas includes the conduct of the nonresident, noting that the statute is to be liberally construed. *Volt Delta Resources Inc. v. Devine,* 241 Kan. 775, 740 P.2d 1089 (1987).

(2) If so, whether the assertion of jurisdiction comports with due process requirements. *Slawson v. Hair,* 716 F.

Supp. 1373, 1375 (D.Kan.1989). Satisfaction of due process depends on the quality and nature of the activities of the defendant, determined on a case by case basis. *Woodring v. Hall,* 200 Kan. 597, 602, 438 P.2d 135, 141 (1968).

The pertinent provisions of the Kansas long arm statute read as follows:

"*(b) Submitting to jurisdiction-process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

"*(1)* The transaction of any business within this state" Kan. Stat. Ann. 60-308(b)(1) and (b)(2).

Kansas courts have defined what is meant by the transaction of business:

"'Business' is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. *Woodring v. Hall,* 200 Kan. at 607, 438 P.2d 135. The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state. *White v. Goldthwaite,* 204 Kan. 83, 88, 460

*v. Devine,* 241 Kan. 775, 778, 740 P.2d 1089, 1092 (1987).

The record is minimal as to whether Weber-Harris engaged in a "transaction" within the State of Kansas. The only document submitted by the parties by stipulation is the first page of the parties' contract. One cannot glean from this document the full extent of the terms and conditions, as it is apparent that there is at least one other page missing. Moreover, while there are various signatures on the document, it is impossible to determine when they were placed on the document. Presumably, Weber-Harris mailed the document to Sabatini, without any signatures by Weber-Harris personnel. Most likely, Sabatini then affixed his signature where indicted and mailed the document back to Weber-Harris, along with the down payment. At that point, someone from Weber-Harris must have communicated with Sabatini to let Sabatini know that the truck was available for delivery. Sabatini then arranged for a contractor to go to Pennsylvania and pick up the vehicle. "An offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." (13 Pa.C.S. § 2206(a)(1), Kan. Stat. Ann. 84-2-206.) Weber-Harris invited acceptance by mailing the contract to Sabatini. The offer was accepted by Sabatini who mailed back the signed contract, along with the down payment to Weber-Harris. A good argument can be made that such activity does not rise to the level of transacting business within the State of Kansas and that the contract did not come into existence until Weber-Harris received back the signed contract and down pay-

ment in Pennsylvania; however, because the Kansas long arm statute is to be liberally construed, we find that this action by Weber-Harris amounted to the transaction of business in Kansas.

Our inquiry does not end with such a finding. The next step requires a due process analysis.

A nonresident must have had certain "minimum contacts" with the forum state in order to satisfy the requirements of due process and these contacts must be such as to not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The nonresident must have fair warning of being subject to jurisdiction and the activity engaged in must be "purposefully directed at residents of the forum" such that the litigation "arises from or relates to those activities." *Burger King v. Rudzewicz,* 471 U.S. 462, 472 (1984). The notion of forseeability is a second feature of the minimum contacts analysis, meaning that the nonresident should reasonably be expected to be haled into court in the forum state to adjudicate a dispute. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). One looks to whether the nonresident party acted with a purpose of enjoying the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King,* 471 U.S. at 475. Physical contact by the nonresident is not required. *Pedi-Bares Inc. v. P & C Food Markets Inc.,* 567 F.2d 933 (10th Cir. 1977); *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan. App. 2d 331, 333, 579 P.2d 158 (1978).

Sabatini and Weber-Harris were brought together by an Internet advertisement. As such, the case of *Zippo Mfg. Co. v. Zippo Dot Com. Inc.,* 925 F. Supp. 1119 (W.D. Pa. 1997) is instructive in our due process analysis. The holding in *Zippo* recommends the application of a sliding scale to determine whether there are sufficient contacts to invoke jurisdiction.

"This sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g., CompuServe Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996). At the opposite end are situations where a defendant has simply posted information on an Internet web site which is accessible to users in foreign jurisdictions. A passive web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g., Bensusan Restaurant Corp. v. King,* 937 F. Supp. 295 (S.D.N.Y. 1996). The middle ground is occupied by interactive web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the web site. *E.g., Maritz Inc. v. Cybergold Inc.,* 947 F. Supp. 1328 (E.D. Mo. 1996)." *Zippo,* 952 F. Supp. at 1124.

Applying these principles, this court finds that the District Court of Shawnee County did not have jurisdiction to enter judgment against Weber-Harris. Weber-Harris merely posted the vehicles it had available for sale on its web site, responded to an inquiry from Sabatini and sent him a contract. No agents or employees of Weber-Harris ever entered upon Kansas soil. Sabatini sent an agent to Pennsylvania to pick up the vehicle. There was no evidence that Weber-Harris conducted any form of advertising that targeted citizens of the State of Kansas, nor is there any evidence that Weber-Harris ever availed itself of the privileges of doing business in the State of Kansas. There is no evidence that Weber-Harris expected to be haled into a Kansas court for the resolution of any disputes. This appears to be an isolated sale of one vehicle to a citizen of Kansas. Utilizing the "sliding scale" approach recommended in *Zippo,* Weber-Harris was little more than a passive participant that "has simply posted information on an Internet web site which is accessible to users in foreign jurisdictions." *Id.*

Because this court finds that the District Court of Shawnee County, Kansas did not have jurisdiction under Kansas law to enter judgment against Weber-Harris, we shall order that the judgment entered by the prothonotary be vacated.

## ORDER

And now, February 12, 2010, the court grants the defendant's motion to vacate judgment. The judgment entered by the prothonotary upon praecipe of the plaintiff, Matt C. Sabatini, is hereby vacated and stricken from the record.