Argued Oct. 3, decided Oct. 22, rehearing denied Nov. 12, 1912.

## ROWLEY v. HAGER.*

### (127 Pac. 36.)

**Corporations—Parties—Signature of Officer Binding on Corporation.**

1. The intention of the parties is the prevailing consideration in determining who is to be bound by an ordinary contract not under seal, signed by an individual as president of a corporation, and, if the nature and circumstances show that the intention was to bind the corporation, and not the individual, effect will be given thereto.

**Courts—Precedents—Previous Decisions—Decision by Divided Court.**

2. Where only two members of the Supreme Court participated in a decision, one being for affirmance and the other for reversal, resulting in an affirmance, the statement of the law in neither opinion stands as a declaration of the court.

**Vendor and Purchaser—Contract—Construing Instruments Together.**

3. Where a person refused to purchase land until an offer was made to resell the property for him at an advance by a certain date, and on the date of such offer he paid a portion of the purchase price, and such agreement to so resell referred to the contract of sale, later made, both writings will be considered as parts of the same transaction and to constitute the agreement between the company and the purchaser, though the first was signed only by a salesman and another "as president" of the company.

---

*As to personal liability of officers on note made for corporation, see note in 19 L. R. A. 676.                    REPORTER.

**Corporations—Acts of Agent—Ratification.**

4. A corporation which accepted payments under a contract to sell land, made by its agents in its behalf and within its corporate powers, with knowledge that the agreement contained a stipulation that the purchaser could have a resale, and a sum additional to the purchase price would be paid him at a certain date, which made no attempt to rescind and place the purchaser in statu quo, became a party to and bound by the contract to resell.

**Vendor and Purchaser—Actions—Measure of Recovery.**

5. Where a purchaser under a contract for the purchase of land, containing a provision for a resale and the payment to the purchaser of a sum out of the resale price in addition to any payments made by him, elected on the vendor's breach, to surrender the land and sue for the amount agreed to be paid rather than to retain the property and sue for the difference between the value of the land and the price the purchaser agreed to pay for it, the measure of recovery is the amount agreed to be paid by the resale contract, rather than the difference between the actual value of the property on the date such resale was to have been made and the price for which the defendant agreed to sell it.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is an action by E. M. Rowley against Frank A. Hager, F. R. Schikora and the Woodburn Orchard Company, a corporation. The facts are as follows:

The defendant Woodburn Orchard Company entered into an agreement with E. M. Rowley to sell to him tract numbered 33 of the Woodburn Orchard Company tracts, at the price of $2,200, $200 to be paid in cash and the balance in monthly installments, beginning March 14, 1910, the contract of sale bearing date the 14th day of February, 1910. As an inducement to enter into said contract on the part of Rowley there was executed to him the following agreement:

"We, the undersigned, hereby agree to effect a resale of tract 33, purchased this day by E. M. Rowley, on or

before July 15th, 1910, and pay Mr. E. M. Rowley out of the resale price, two hundred and no-100 (200) in addition to all amounts paid up to date of resale. All amounts over and above the two hundred dollars (200) which we should be able to obtain through the resale of tract 33 are to be retained by the undersigned, as compensation for the transaction of this deal.

"Portland, Oregon, February 10th, 1910.

"Frank A. Hager, Salesman.

"F. R. Schikora, President Woodburn Orchard Co., Inc."

Plaintiff made monthly payments upon the contract until September. The defendants failed and neglected to effect a resale of the tract, and plaintiff demands of them the amount that he has paid upon the contract of sale, namely, $437.20, and $200 additional, as provided for in the resale agreement. Defendant Hager answers the complaint, contesting only the amount of plaintiff's recovery, namely, insisting that it should be the difference between the actual value of the property on July 15th and the price contracted for in the resale agreement. The Woodburn Orchard Company, defendant, denies any liability upon the resale agreement, and denies that it is its agreement. Plaintiff obtained judgment in the circuit court, and the defendants appeal.

AFFIRMED.

For appellant, Woodburn Orchard Company, there was a brief and oral arguments by *Mr. Elisha P. Morcom* and *Miss Frances M. Kemp.*

For appellant, Frank A. Hager, there was a brief and an oral argument by *Mr. R. F. Peters.*

For respondent there was a brief over the names of *Messrs. Pearcy & Wintler,* with an oral argument by *Mr. Carl B. Wintler.*

Opinion by MR. CHIEF JUSTICE EAKIN.

MR. JUSTICE BURNETT dissents.

1. It is necessary first to determine whether the agreement of February 10, 1910, is the obligation of

Schikora or of the Woodburn Orchard Company, being signed by "F. R. Schikora, President Woodburn Orchard Co., Inc."

2. Plaintiff relies upon the opinion in *Guthrie* v. *Imbrie,* 12 Or. 182 (6 Pac. 664: 53 Am. Rep. 331), as decisive of this question in his favor. The judgment of the circuit court in that case was affirmed because there were only two members of the court participating in the decision. One was for affirmance and the other for reversal, which necessarily resulted in affirmance of the judgment; and the statement of the law in either opinion does not stand as a declaration of the court. However, the opinion of Mr. Justice LORD, who was for affirmance, bases his conclusion upon the fact that the seal of the corporation was affixed to the instrument, and not upon the form of the signature; and therefore his opinion does not support plaintiff's contention. *Ogden Ry. Co.* v. *Wright,* 31 Or. 150 (49 Pac. 975), although relating to a signature as trustee and not as an officer of the corporation, holds that "the mere use by the promisor of the name of trustee, or any other name of office or employment, will not discharge him. Some one must be bound by the contract, and, if he does not bind some other, he binds himself." In that case, however, it was held, in effect, that such a signature is only *prima facie* that of the individual.

There is a great conflict in the authorities as to whether parol evidence is admissible to show that the liability is that of the corporation in case of doubt by reason of the form of signature. There is an extended note on this question to the case of *Mathews* v. *Dubuque Mattress Co.,* 87 Iowa, 246 (54 N. W. 225), in 19 L. R. A. 676 collating the cases. In that case it is held that "parol evidence is not admissible to show that a person who signs a negotiable note in a form showing an individual liability intended only to bind a corporation of which he

was president, although he added to his signature a description of his official capacity." But in the note to the case it is said that "in the matter of the liability of officers signing notes for corporations it will be found that, while there appears some conflict in the various states, yet the liability of the signor is governed largely by the form of the promise, the intention of the parties, the form of the signature, the consideration and the purpose expressed." Cook, Stock and Stockholders and Corporation Law, Section 724, in speaking of attempts made to hold the officers individually in cases of such signatures, says:

"The courts, however, have quite uniformly defeated such attempts to hold the officer or agent liable. If the instrument or contract indicates that the officer or agent is acting only as agent, and if the name of the corporation appears on the instrument, the officer or agent is not liable thereon. But there have been many cases upholding a contrary rule. The weight of authority holds the corporation alone liable."

Most of the cases we have examined on this subject involve signature to negotiable instruments or sealed writings, in which the rule seems to be more strict against parol modification or explanation than in unsealed instruments (2 Stra. 955), while in contracts not under seal, other than negotiable instruments, the form of the signature is not so important. The intention of the parties is the prevailing consideration, and, if the nature and circumstances of a transaction show that the intention was to bind the principal and not the agent, effect will be given to such intention. 1 Am. & Eng. Enc. Law (2 ed.) 1050; 31 Cyc. 1414.

3. In determining the intention of the parties to the instrument in this case, we should look to the circumstances of the sale and the two writings as parts of one transaction. It appears that Hager and Schikora both participated in making the sale, and had authority to

make it, and were importuning plaintiff to purchase. He refused to do so until the offer was made to resell the property for him, at an advance of $200, by July 15th. That offer constituted part of the consideration passing to the plaintiff, and the purchase constituted the consideration for the promise to resell. The first payment of $50 was by check, and bears the same date as the agreement to resell (February 10th), and the check and agreement to resell were evidently delivered at the same time. The contract of sale is dated February 14th, and the balance of the first payment ($150) was paid by check, also of that date; and they were both apparently delivered at that time. Both writings and both checks were parts of one transaction, and the two writings constitute the agreement between the company and the plaintiff. The agreement to resell refers to the contract of sale, and therefore recognizes the corporation as the contracting party. Schikora was president of the corporation, was in charge of its office, and in charge of the company's business at Portland. This deal was transacted in Portland, and plaintiff testified that the contract of resale was afterwards ratified by Hager and Schikora at the company's office.

4. The plaintiff testified that about June 15th he notified the company in regard to their performance of their part of the contract. The secretary of the corporation testifies he got a letter from plaintiff as to the contract of resale, and that all the officers of the corporation knew of the agreement to resell by August 1st; that the company thereafter kept on receiving the monthly payments from plaintiff. From the evidence there can be no doubt but that plaintiff and Schikora both intended the contract of February 10th as the contract of the corporation. It was made on its behalf and for its benefit, and it had power, by its articles, to contract to sell real estate; its purpose, among other things, being: "To

act as agent for others in the management, improvement, sale and transfer of lands, or otherwise." Whether or not its agents had authority to bind the corporation to effect a sale within a definite time at a definite price the contract was intended as a contract of the corporation, and not only was acted upon as such, but was ratified by the company in receiving the benefits of the contract with knowledge of its terms. It could not repudiate a part of the contract and enforce the remainder. It was its duty when it learned of the terms of the contract, if it did not intend to be bound by them, to have immediately rescinded the contract, and placed the plaintiff *in statu quo.* Therefore we conclude that the defendant company is a party to and bound by the contract to resell.

5. There is also a controversy as to the measure of plaintiff's recovery, defendant Hager contending that it is the difference between the actual value of the property on July 15th and the price for which defendant agreed to sell it. If plaintiff sought to retain the property, that might be a proper measure of his damage; but plaintiff has surrendered his contract to the defendants, and sues for the amount agreed by the defendants to be paid over upon the resale, and the question is whether the plaintiff can demand the full amount notwithstanding the resale has not been effected. The defendants bound themselves to resell and pay to plaintiff all money paid by him and the $200 in addition. The company retained the title to the property, and the contract fixes the measure of plaintiff's damages. The action is not for damages for failure to sell, but damages for failure to pay. The contract to pay is not conditional upon a resale but defendants obligated themselves to sell and to pay. In *Dunn* v. *Mackey,* 80 Cal. 104 (22 Pac. 64), it is held on a similar contract that "there can be no doubt that the defendant bound himself to realize and pay the plaintiff within one year a certain

and fixed sum of money. The fact that he was, if possible, to realize the money by a sale of property to some one else, does not affect the question, as he bound himself unqualifiedly to account for and pay over that sum of money at the end of the year, or before if he made a sale of the property." A like holding is found in *Ross v. Gold Ridge Mining Co.*, 14 Idaho, 687 (95 Pac. 821), where it is held that, "under this contract, the measure of damages is fixed, the defendant agreeing to sell said stock for five cents a share clear. If the defendant fails to perform its part of said contract—that is, fails to sell said stock at the price fixed by the contract—then the contract itself fixes the damages at five cents a share clear." Also *Sprague* v. *Hart*, 11 Cal. App. 782 (106 Pac. 590), is to the same effect.

It is true plaintiff might have retained the property and sued for the difference between the value and the contract price; but he has elected to pursue this remedy, and defendant cannot complain  We find no error in the ruling of the circuit court. The judgment is affirmed.

AFFIRMED.

MR. JUSTICE BURNETT dissents from this conclusion.