Argued October 7, affirmed December 12, 1974

GEER, *Respondent, v.* FARQUHAR, *Appellant.*

528 P2d 1335

*Gerald R. Pullen,* Portland, argued the cause and filed a brief for appellant.

*Derryck H. Dittman,* Tigard, argued the cause for respondent. With him on the brief were Anderson, Dittman & Anderson, Tigard.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, SLOPER and LEAVY, Justices.

SLOPER, J. (Pro Tempore)

This is an action at law on a promissory note executed by defendant Farquhar in the names of defendant Farquhar and Oceans West Development Corporation. The note was on a standard form printed note and defendant Farquhar filled in the appropriate blanks. The note was signed by defendant Farquhar with his signature which was followed by a dash and the words Oceans West Dev. Corp. which were printed. Trial was had to the court upon a waiver of jury trial, and from a judgment in favor of plaintiff and against both defendants, defendant Farquhar appeals.

Defendant Farquhar's sole assignment of error is that there is no substantial evidence to support the court's finding of fact that defendant Farquhar was individually and personally liable upon the note and that the court erred in failing to sustain defendant's affirmative defense that he was acting as a corporate officer. Defendant on page one of his brief distills the question presented on appeal simply to whether plaintiff while testifying at trial made a binding judicial admission which would exonerate defendant Farquhar from personal liability.

■ The trial court concluded after its review of the conflicting evidence that plaintiff had established a case against both defendants. Our review of that finding is limited to a determination of whether the trial judge's decision is supported by any competent, substantial evidence, and in such examination we consider the evidence in the light most favorable to plaintiff, who is entitled to the benefit of all favorable evidence and the inferences which may be reasonably drawn therefrom. *Krause v. Eugene Dodge, Inc.*, 265 Or 486, 490, 509 P2d 1199 (1973); *Emerson v. Western Photo-Mount Co.*, 267 Or 562, 564, 518 P2d 171 (1974); *Carlson v. May Department Stores Company*, 270 Or 289, 527 P2d 252 (1974).

Wesley Geer, plaintiff, was employed as a foreman and carpenter for defendant Oceans West Development Corporation on a fourplex project, in Newport, Oregon, during the spring of 1971. Oceans West had been formed by Farquhar and a Mr. Randolph and they were the only persons interested in the corporation at the relevant time. Farquhar was president of the corporation and was plaintiff's immediate supervisor on the job. Farquhar would periodically come to

the job site and bring the payroll for plaintiff and other employees. Around the end of April, Oceans West ran out of money to complete the project. This fact was communicated to plaintiff by defendant Farquhar. Plaintiff understood that approximately $2,000 was needed to complete the project and he advised Farquhar that he was willing to loan him the sum of $2,000. He was motivated in making the loan by the desire to have continued employment. Plaintiff took the $2,000 from his savings account and gave it in cash to Farquhar, who, in turn, gave plaintiff the promissory note which is the basis of this case. The form note was filled out and executed by Farquhar, as noted above, and the funds received from plaintiff were, in fact, used for the building project. Plaintiff had advised Farquhar that he wanted a note to secure the contemplated loan and advised him that he wanted both signatures on the note, both signatures being Oceans West Corporation and Farquhar.

■ Defendant Farquhar contends that an answer given by plaintiff during his direct examination constitutes a judicial admission and as such defeats his cause of action against defendant Farquhar, personally. That answer was: "A But I was loaning it to the company, not to Mr. Farquhar." Although the proceeds of the loan went directly to the corporation, defendant Farquhar could still be personally liable as a cosigner of the note. The answer must be considered in the illumination that is provided by plaintiff's other answers on this same subject matter. The question and answer immediately preceding the alleged binding judicial admission was:

"Q  All right.
Now, at some point during your employment for the company did there come a discussion about

the need of additional financing for the corporation?

A Yes, it became very evident that they were going to be short of money and so Mr. Farquhar was in the process of negotiating a loan to finish the building and I felt that he needed $2,000 to apparently complete the thing and so I was willing —I had enough to do it and I was willing to loan it to him."

On cross-examination, plaintiff again gives some comfort to defendant's contention by testifying:

"Q And as far as you are concerned as the plaintiff in this case you were loaning that money to the company and not to Mr. Farquhar personally, is that right?

A Very definitely. I was loaning it to complete the building, to—in other words, I was very interested in keeping the project going, my job. That was my motive in loaning the money."

Plaintiff testified on rebuttal and in response to the following questions gave the following answers:

"Q Mr. Geer, directing your attention to the time that you paid the money to Mr. Farquhar for the payroll and received the note, did you request the note of him?

A Did I what?

Q Did you request him to give you the note?

A I guess that my hearing is getting bad.

Q When you paid Mr. Farquhar the money had you asked him to give you a note for the money?

A I had already told him, yes, that I wanted a note to secure the money.

Q Did you tell him anything about who the note was to be from?

A I simply said that I wanted both signatures on it. I wanted to—because I felt it was the only security that I had and that was what I wanted.

Q    By 'both signatures,' what do you mean?

A    Well, I wanted both people to be responsible for the note, frankly.

Q    By 'both people,' who do you mean?

A    Well, I am speaking in that term of Oceans West as a person. In other words, I wanted Oceans West and Mr. Farquhar to be responsible for the note."

And during cross-examination of his testimony on rebuttal the following occurred:

"Q    Well, wait a minute, Mr. Geer. That is a direct contradiction to the testimony that you gave in this court on direct examination, isn't it?

A    I'm not sure. Did I?

Q    Yes, you testified under oath in your case in chief that there was not the slightest doubt in your mind that this was a corporate obligation; isn't that true?

A    That's right. It was to promote—

Q    And has your counsel talked to you over the recess and told you that he would call you in rebuttal and told you to say that it was also going to be a note from Mr. Farquhar? Did he talk to you about this over the recess?

A    No, that was my actual—I am not a legal mind, I don't know all these legal technicalities. When I loaned the money to Mr. Farquhar I was trying to promote the building of that fourplex.

Q    By Oceans West Development Corporation?

A    That's correct.

I did ask for both signatures on it, I mean both Oceans West on it and Mr. Farquhar. Now, if I done that wrong, I done something wrong; but I mean I didn't know any better.

Q    But you knew Mr. Farquhar was signing as the President of the Corporation, did you not?

A    That's right."

A Mr. Jerold Billings, an attorney who had handled the legal work in incorporating defendant Oceans West, testified that he advised Farquhar how to execute a note to avoid personal responsibility. Although he testified as an expert that the note in question was a corporate obligation, he did not testify that Farquhar was not also personally liable.

Defendant conceded at time of oral argument that the way in which the note was signed by Farquhar was ambiguous. Because of this ambiguity, the following statutory provisions are relevant to a determination of the issue in the case:

"Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement." ORS 73.4020.

"(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

"(2) An authorized representative who signs his own name to an instrument:

"(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity.

"(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

"(3) Except as otherwise established the name of an organization preceded or followed by the name *and office* of an authorized individual is a

signature made in a representative capacity." (Emphasis added.) ORS 73.4030.

This latter statute was discussed in 43 Or L Rev 146 (1964), as follows:

"Paragraph (b) of subsection (2) deals with the situation in which the agent, although indicating his representative capacity, signs only his own name or signs both his principal's name and his own but fails to indicate that he is signing in a representative capacity. Examples are: 'Bob Able, Agent,' or 'Paul Post, Bob Able.' In each of these two instances, as between the maker or drawer and payee, or indorser and indorsee, parol evidence would be admissible to prove that the agent signed only in a representative capacity. Since the agent is personally obligated unless 'otherwise established,' the burden of establishing the nonexistence of obligation would seem to fall on the agent."

■ In *Rowley v. Hager,* 63 Or 246, 250, 127 P 36 (1912), we recognized that the intent of the immediate parties is controlling:

"* * * The intention of the parties is the prevailing consideration, and, if the nature and circumstances of a transaction show that the intention was to bind the principal and not the agent, effect will be given to such intention. 1 Am. & Eng. Enc. Law (2 ed.) 1050; 31 Cyc. 1414.

"In determining the intention of the parties to the instrument in this case, we should look to the circumstances of the sale and the two writings as parts of one transaction. * * *."

This is in accord with the general rule:

"In most instances in which the question at hand has arisen, the contract is not clearly that of the corporation alone or of the officer signing it, but is ambiguous in such respect. In such case, since the determination of this liability depends upon the construction of a written agreement and since

the general rule is that the intention of the parties as derived from the instrument determines the construction of the contract, most courts hold that the liability of the signer of a contract, which may be either a corporate contract or impose individual liability on a corporate officer, is governed by the intention of the parties in such respect as derived from the instrument. * * *." 19 Am Jur 748, Corporations § 1342.

■■ We conclude that the testimony of plaintiff, as noted above, when considered in the light of all his testimony, does not constitute a judicial admission so as to bar his recovery from defendant Farquhar and that there is competent, substantial evidence in the record to support the trial judge's decision.

The judgment of the trial court is affirmed.