(579 P 2d 158)
No. 49,283

Rosedale State Bank & Trust Company, *Appellee,* v. George L. Stringer, *Appellant.*

Opinion filed May 19, 1978.

*Felix Kancel,* of Kansas City, and *F. A. White, Jr.,* of North Kansas City, Missouri, for the appellant.

*William E. Scott,* of Scott, Daily, Vasos & Lester, of Kansas City, and *Bert L. Benjamin,* of Overland Park, for the appellee.

Before Parks, P.J., Abbott and Meyer, JJ.

Abbott, J.: This case involves three questions, one of which defendant abandoned at oral argument. The two remaining issues are whether the trial court had jurisdiction over the person of defendant, George L. Stringer, and, if so, did the court err in excluding parol evidence concerning the capacity in which defendant signed the promissory note in question.

The trial court denied defendant's motion to dismiss on the grounds that the trial court lacked jurisdiction over the defendant. At trial, the court found the promissory note to be clear and unambiguous on its face and refused to allow defendant to introduce parol evidence to the effect that defendant signed the note as president of May Plastics, Inc., and not in his individual

capacity. Judgment was granted to the plaintiff, Rosedale State Bank & Trust Company, for the principal sum due on the note plus accrued interest and costs. Defendant appeals.

The promissory note in question is a renewal note for a loan originally made on September 17, 1974. The original note was cancelled and returned to the defendant when the renewal note was executed on March 16, 1975, and accepted by the plaintiff bank. It was not offered in evidence.

The defendant's evidence was that the renewal note was signed in Missouri by him, and although the record is not absolutely clear the note apparently was caused to be delivered to the plaintiff in Kansas by William D. Jobe, a signatory of the note. The plaintiff's only witness did not know where the note was executed. The record is silent as to where the original note was signed and who signed it. The proceeds of the note, however, were deposited to the account of May Plastics, Inc., with plaintiff bank in Kansas. May Plastics, Inc., was at all times material a Missouri corporation doing business in Missouri.

Defendant was personally served in Missouri. Plaintiff's position is that defendant submitted himself to the jurisdiction in Kansas by doing one of the acts enumerated in K.S.A. 60-308(*b*)(1) and (5). We agree.

Due process requires that in order to subject a defendant to a judgment *in personam* if he be not present within the forum, he must have certain minimum contacts with the forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. (*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L.Ed. 95, 66 S.Ct. 154 [1945].) Essentially the same factors which enter into a determination that K.S.A. 60-308(*b*) authorizes the exercise of judicial jurisdiction are involved in deciding whether the exercise of jurisdiction is constitutionally valid. (*Woodring v. Hall*, 200 Kan. 597, 438 P.2d 135 [1968].) Each case is to be determined on its own facts.

Here, plaintiff alleges jurisdiction exists over the defendant on the basis of K.S.A. 60-308(*b*)(1) and (5), which provide:

"(*b*) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(1)   The transaction of any business within this state;

          *   *   *

"(5)   Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."

Subsection (5) was added effective July 1, 1971, in an obvious effort to broaden the scope of K.S.A. 60-308. The Kansas Supreme Court has said many times, both before and since the addition of subsection (5), that the intent of the legislature in enacting K.S.A. 60-308 was to extend the jurisdiction of the courts of this state to the full extent authorized by the due process clause of the Fourteenth Amendment. (*Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248 [1974]; *White v. Goldthwaite,* 204 Kan. 83, 460 P.2d 578 [1969]; and *Woodring v. Hall,* supra.) It is significant that the legislature saw fit to broaden the statute after the decisions in *Woodring v. Hall,* supra, and *Oswalt Industries, Inc. v. Gilmore,* 297 F. Supp. 307 (D. Kan. 1969)—two of the cases upon which defendant relies.

Physical presence is not constitutionally mandated in order to establish minimum contacts. In *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L.Ed.2d 223, 78 S.Ct. 199 (1957), the Supreme Court of the United States upheld the exercise of *in personam* jurisdiction by a California state court where the only contact with the forum was by mail. The Supreme Court there stated it was "sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." (p. 223.)

Nearly a decade ago, the Kansas Supreme Court, in *White v. Goldthwaite,* supra, stated the basic factors which must coincide to sustain an exercise of jurisdiction over a nonresident defendant on the basis of the transaction of business within the state as follows:

"(1)   [T]he nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." (Syl. ¶ 3.)

The Kansas Court of Appeals recently held that solicitation by

mail for services to be performed in another state may be held to be sufficient transaction of business within the state to support *in personam* jurisdiction over a nonresident defendant. (*Prather v. Olson,* 1 Kan. App. 2d 142, 147, 562 P.2d 142 [1977].)

Here we are faced with a situation where a loan was made in Kansas from a Kansas bank and the money received from the loan was deposited in a Kansas bank and subsequently withdrawn. When the note came due, the interest was paid and a renewal note was accepted by the bank. The fact that the renewal note was executed outside the state of Kansas is immaterial. The note was clearly given to induce the bank to forego calling the note. It was clearly the intent of the parties that the note, even though signed in Missouri, was to be delivered and accepted by the Kansas bank in Kansas, and all payments were to be made in Kansas. The defendant knew, or should have known, that the agreement was to be accepted and paid in Kansas and would have substantial effect in Kansas. This was not a unilateral agreement for payment such as the Kansas Supreme Court found insufficient to support *in personam* jurisdiction in *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* supra. We are more persuaded by the reasoning in *National Bank of America at Salina v. Calhoun,* 253 F. Supp. 346 (D. Kan. 1966), where in an action to recover for insufficient fund checks the federal court held that the statutory promise to pay the holder the amount of the checks, if they were not paid when presented to the Nebraska bank upon which they were drawn, constituted the transaction of business in Kansas where the checks were delivered to a Kansas resident in Kansas. We therefore conclude the trial court correctly determined there were sufficient contacts with Kansas to support *in personam* jurisdiction.

Defendant next argues the trial court erred in excluding parol evidence of the capacity in which defendant executed the promissory note.

The note itself is a preprinted form stating that "the undersigned jointly and severally promise to pay." The signature lines of the note appear as follows:

MAY PLASTICS, INC.

By: /s/ William D. Jobe    Secretary

William D. Jobe

/s/ William D. Jobe

William D. Jobe

/s/ George L. Stringer

George L. Stringer

George L. Stringer was the president of May Plastics, Inc. William D. Jobe was the secretary. A corporate resolution filed with the bank authorized either Stringer or Jobe to negotiate and procure loans. As corporate officers, each was a "representative" of the corporation as the word is used in the Uniform Commercial Code (K.S.A. 84-1-201 [35].)

Stringer attempted to introduce parol evidence to the effect that he signed the note in a representative capacity as president of May Plastics, Inc., and that the bank had agreed that he was not signing in an individual capacity. The trial court refused to hear evidence on the subject, but allowed Stringer to make a proffer. Judgment was entered against Stringer for the remainder due on the note plus accrued interest, and this appeal followed.

Kansas case law has long prohibited the use of parol evidence to show that a party intended to sign a note in a representative capacity when the note did not clearly indicate his intention to be bound other than individually. (*Lonnon v. Batchman,* 103 Kan. 266, 173 Pac. 415 [1918].) However, the law which controlled in the *Lonnon* case was the Negotiable Instruments Law. (Gen. Stat. 1915, § 6590.) The transactions in this case are governed by the Uniform Commercial Code which succeeded the Negotiable Instruments Law. K.S.A. 84-3-403 provides in part:

"(2) An authorized representative who signs his own name to an instrument

"(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

"(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity."

The Kansas comments to subparagraph (2) (*b*) of the above statute provide:

"(b) As against other than immediate parties, accords with the general import of Kansas decisional law in Lonnon v. Batchman, 103 K. 266, 173 P. 415 (1918)

and Jett-Wood Central Mercantile Co. v. Pringle, 128 K. 159, 277 P. 37 (1929), but those cases involved immediate parties, and parol evidence is admissible under this subsection, contrary to the precise holding in the Lonnon case and perhaps contrary to the holding in the Jett-Wood case."

The official comments to the Uniform Commercial Code indicate that parol evidence is admissible in litigation between the immediate parties to prove the agreement between the parties as to the capacity in which a party signed where the instrument names the person represented but does not show that the person signed in a representative capacity. (Uniform Commercial Code [Uniform Laws Anno.], § 3-403; 23 A.L.R.3d 932, 967; 11 Am. Jur. 2d, Bills & Notes §§ 566, 575.) Such a rule is in harmony with Restatement (Second), Agency § 324 (3), which allows parol evidence as between the immediate parties if the principal's name appears upon a negotiable instrument and the agent has not unambiguously signed in an individual capacity.

Although there are no Kansas cases construing K.S.A. 84-3-403 (2), a number of jurisdictions have construed identical statutes. None of them have considered signatures identical to this case. One of the closest is *Stage Door Restaurant, Inc. v. L. N. Hill Company, Inc.*, 248 A.2d 828 (D. C. 1969). The promissory note in question was signed for Stage Door Restaurant, Inc., by James A. Kefalas, President. The note was endorsed a second time by Kefalas and then by Samuel Schanker. Schanker was also an officer of the corporation. The pleadings put in issue the capacity in which Schanker signed the promissory note. Schanker testified it was his understanding with the lender that he was signing in a representative capacity and not as an individual. The court held that parol evidence was admissible to show that the individual signed as a representative of the corporation and that it was not intended that he incur individual liability.

Maryland affirmed a decision against a lending institution which attempted to hold a person individually responsible for his signature on a note in *Leahy, Executrix v. McManus*, 237 Md. 450, 206 A.2d 688 (1965). The note was stamped with the corporate name of Multi-Krome Color Process, Inc., and immediately below were the signatures of C. E. McManus, Jr., and C. E. Delauney without designation of any representative capacity. The corporation had received the proceeds from the note and, as in the case before us, the corporation was not solvent when suit was filed. The note stated "we promise to pay." McManus tes-

tified that he was signing as a corporate officer and that "we" meant the corporation as a collective group. Maryland held, "As between the parties, in this State, while a person who signed a note made by a corporation is *prima facie* liable to the payee, if there is conflict in the evidence relative to the circumstances, the individual who signed that note is not liable if he affirmatively shows an understanding between him and the payee that there was to be no personal liability." (p. 454.) Although adopted, the Uniform Commercial Code was not yet in effect in Maryland at the time of the transaction, but the court specifically noted that the adopted code embodied the same principle in section 3-403.

In *Geer v. Farquhar,* 270 Or. 642, 528 P.2d 1335 (1974), Farquhar's signature was followed by a dash and the words "Oceans West Dev. Corp." The court allowed Geer to introduce parol evidence that as between the immediate parties there was an agreement that Farquhar would sign as an individual and for the corporation. The Oregon court recognized that the intent of the immediate parties is controlling and parol evidence may be introduced to show their intent.

In *Fanning v. Hembree Oil Co.,* 245 Ark. 825, 434 S.W.2d 822 (1968), the words "Razorback Asphalt Co., Inc.," had two signatures immediately below. No representative capacity of the signers was placed on the note. The trial court permitted parol evidence to determine the capacity in which the signatures were affixed. The statutory provision was identical to its Kansas counterpart. The court held that the signer had the burden of showing an understanding between himself and the holder of the note that he had signed the note in a representative capacity and would not be personally liable on the note.

Section 3-403 of the Uniform Commercial Code was considered in *Bank v. Pocock,* 29 N.C. App. 52, 223 S.E.2d 518 (1976). There, a security agreement included both a note and chattel mortgage. The security agreement was signed:

|  |  |
|---|---|
| <u>S & S Cleaners Inc.</u> | (Seal) |
| Debtor | |
| <u>s/ Ian I. Pocock, Pres.</u> | (Seal) |
| Debtor | |
| <u>s/ Laura E. Pocock, Sec.-Treas.</u> | (Seal) |
| Debtor | |

The case did not involve the signature on the front of the note.

The question involved the guarantee on the reverse side of the security agreement where the name of the corporation did not appear. It was signed by "Ian I. Pocock, Pres." and "Laura E. Pocock, Sec.-Treas." The instrument did not name a person represented, but did show the defendant signed in a representative capacity. This situation is covered by 84-3-403(2)(*b*) of our statute which is identical to the North Carolina section. The court stated that the determinative issue was whether the guarantee was signed by the Pococks with an understanding being "otherwise established between the immediate parties" that the Pococks were not signing in an individual capacity. North Carolina placed the burden on the signing party to prove an agreement between the immediate parties that they would not be personally obligated and allowed parol evidence.

The Minnesota Supreme Court considered a promissory note wherein the maker's signature line contained the typewritten name of the corporate debtor, "Southdale Pro-Bowl, Inc." On the line below, one of its officers, John Dorek, signed his name with an appropriate indication of his representative capacity as president of the corporation. Immediately below John Dorek's signature appeared the signature of the defendant, Frank Buetel. Buetel's representative capacity did not appear on the note. Both individuals signed the reverse side of the note in an identical manner. Minnesota, which, like Kansas, had adopted 3-403 of the Uniform Commercial Code, considered for the first time whether the trial court properly admitted parol evidence concerning the capacity in which Buetel signed the note. The Minnesota court determined that there was reasonable doubt as to whether the endorser signed in a representative or individual capacity and permitted the introduction of parol evidence. (*Weather-Rite, Inc. v. Southdale Pro-Bowl, Inc.*, 222 N.W.2d 789 [Minn. 1974].)

The Illinois Court of Appeals, in *First National Bank of Elgin v. Achilli*, 14 Ill. App. 3d 1, 301 N.E.2d 739 (1973), allowed parol evidence where the promissory note was signed in the lower right hand corner:

HIGHLAND MOTOR SALES
/S/ RUTH ACHILLI (SEAL)
/S/ HOWARD ACHILLI (SEAL)

Illinois had also adopted 3-403 of the Uniform Commercial Code, and they held, "Since only the immediate parties to the note are involved, we hold that the signatures in question are sufficiently

ambiguous to allow extrinsic evidence showing the capacity in which the parties intended defendants to sign." (p. 5.)

The same section of the Uniform Commercial Code was considered by the Florida Court of Appeals in *Speer v. Friedland,* 276 So. 2d 84 (Fla. App. 1973). The *Speer* case involved signatures on a check that had been returned for insufficient funds. The name of the organization represented appeared immediately above two signatures. Neither signature indicated a representative capacity. The Florida Court of Appeals held that it was presumed that the check was signed in a personal capacity, but the presumption was overcome by evidence presented by the signer. The burden then shifted to the holder of the check to prove that the check had been signed in an individual capacity unaided by the presumption that it had been signed in an individual capacity. The court held the signatures were ambiguous prior to allowing parol evidence.

The opinion of the trial judge in this case is persuasive and well-reasoned. However, the language of the statute is clear. The intent of the legislature must be found from the language of the statute and, where the language used is plain and unambiguous and appropriate to an obvious purpose, the court should follow the intent as expressed by the words used. (*State v. V.F.W. Post No. 3722,* 215 Kan. 693, 527 P.2d 1020 [1974]; *Sampson v. Rumsey,* 1 Kan. App. 2d 191, 563 P.2d 506 [1977].)

The legislature, by adopting the sections of the Uniform Commercial Code without change, obviously intended the provisions to be interpreted as set forth in the official comments which were available to the legislature at that time. We therefore have no hesitancy in holding that as between the immediate parties to a negotiable instrument parol evidence is admissible to show the intention of the parties where the instrument names the person represented, but does not show that the individual signed in a representative capacity. Under those circumstances, there is a presumption that the promissory note was signed in an individual capacity and the person who signed the note has the burden of overcoming that presumption. The trial court committed reversible error in excluding defendant's testimony concerning the understanding of the parties as to defendant's capacity in signing the note.

We do not deem that portion of the preprinted promissory note

reading "the undersigned jointly and severally promise to pay" as being material to our decision. William D. Jobe unquestionably signed the promissory note in both a representative and individual capacity. Thus, the language in the instrument would be applicable regardless of the capacity in which Stringer signed.

In his brief, the defendant challenged the constitutionality of K.S.A. 16a-1-109. At oral argument, defendant abandoned that point.

Reversed and remanded for retrial.