Submitted on records and briefs December 23, 1985, affirmed and remanded and reversed and remanded May 21, reconsideration denied July 25, petition for review denied September 30, 1986 (302 Or 36)

SALEM TENT & AWNING CO.,
*Appellant,*

*v.*

SCHMIDT et al,
*Respondents.*

(141,038; CA A36789)

719 P2d 899

Karol Wyatt Kersh and Karol Wyatt Kersh & Associates, P.C., Salem, filed the brief for appellant.

D. Olcott Thompson, Salem, filed the brief for respondents.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an action for damages arising out of a contract for the rental of tents. After a trial to the court, plaintiff received judgment against the corporate defendant only. On appeal, it contends that the trial court erred in fixing the amount of damages, in finding that defendants Schmidt and Ulven were not liable for the damages and in denying its claim for attorney fees. The dispositive issue is whether plaintiff may hold Schmidt and Ulven individually and personally liable, either as agents for an undisclosed principal or by piercing the corporate veil.

Before the 1981 Christmas season, Schmidt and Ulven, dba "Western Oregon Christmas Trees," a partnership owned by Schmidt, Ulven and Hari, met with plaintiff to discuss renting tents. An agreement was reached. When the tents were returned, there was some discussion about repeating the arrangement during the 1982 Christmas season.

In 1982, unknown to plaintiff, Schmidt and Ulven formed a new partnership without Hari.[1] They continued using the name "Western Oregon Christmas Trees." During the summer of 1982, plaintiff contacted Ulven to see if the partners wanted to rent tents for the 1982 Christmas season. Before an agreement was reached, Schmidt and Ulven incorporated under the name "Western Oregon Christmas Trees, Inc." (WOCT). A certificate of incorporation was issued in August, 1982. Plaintiff was not told that the business had been incorporated.

In November, 1982, an agreement was reached for tent rental. Plaintiff prepared an invoice that indicated that the tents were being rented to "W. Oreg. Christmas Tree." Schmidt signed the invoice without indicating that he was signing as an officer, agent or employee of a corporation. The invoice stated: "Renter Is Responsible For Damages" and "In case any legal action is instituted to collect the account, I agree to pay such attorneys fees as the court may deem

---

[1] Plaintiff's evidence shows that at some time during the 1982 discussions, Schmidt told plaintiff that the three-person "Western Oregon Christmas Trees" partnership had become a two-person partnership, of which Schmidt and Ulven were the partners. Defendants did not deny that Schmidt had made such a statement. They assert only that the date when the statement was made was not established at trial.

reasonable and the costs and disbursements of said action." Schmidt gave plaintiff a $2,000 down-payment check on which was printed "Western Oregon Christmas Trees." The check, which had been printed for one of Schmidt's and Ulven's previous partnerships, did not indicate that it was a corporate check. Defendants received the tents in November, 1982. While they had them, several were destroyed and others were damaged during a storm. When defendants refused to pay for the damages, this action resulted. The trial court found that WOCT was liable for $12,364 in damages but that Schmidt and Ulven were not individually and personally liable. The court awarded no attorney fees.[2]

■     Plaintiff first contends that the trial court erred in fixing the amount of damages. That contention lacks merit. There is evidence in the record to support the court's finding, and we find no error. *See Saga Enterprises, Inc. v. Coldwell, Banker and Co.*, 287 Or 169, 180, 598 P2d 285 (1979); *Geer v. Farquhar*, 270 Or 642, 644, 528 P2d 1335 (1974).

■     Plaintiff next contends that the trial court erred in finding that Schmidt and Ulven were not individually and personally liable for the damages. Plaintiff pled and argued two theories of personal liability. Its first theory was that they were agents of an undisclosed principal. Defendants argue that, because the damages plaintiff claims did not result from nondisclosure and because there was no evidence that plaintiff would not have rented the tents to Schmidt and Ulven had it known that WOCT was incorporated, they cannot be held liable on the basis of nondisclosure.[3] Defendants miss the point. Plaintiff's claim is based on the contract, not on misrepresentation. Thus, plaintiff did not need to prove that the misrepresentation caused the damages.

*Restatement (Second) Agency* § 322 provides:

"An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract."

---

[2] It is not clear why the trial court denied plaintiff attorney fees.

[3] At trial, plaintiff's only evidence on its damages resulting from nondisclosure was that, had it known that Schmidt and Ulven were incorporated, it would have required payment of the full rental fee in advance before delivering the tents. The evidence shows, however, that plaintiff eventually was paid the full rental fee.

Oregon recognizes the rule that an agent who fails to disclose the existence and identity of the agent's principal at the time of entering into a contract with a third person may be held personally liable on that contract. *See Willam. T. & B. Co. v. Com. Dis. Corp.,* 180 Or 657, 178 P2d 698 (1947). Plaintiff pled that Schmidt and Ulven dealt with it as individuals or as partners and there is evidence to support those allegations. The trial court held that plaintiff had to prove that any nondisclosure caused it damage in order to hold Schmidt and Ulven personally liable on the contract. That was error.

Plaintiff's second theory is "piercing the corporate veil." *See Amfac Foods v. Int'l Systems,* 294 Or 94, 654 P2d 1092 (1982); Barber, "Piercing the Corporate Veil," 17 Will L J 371 (1981). Plaintiff's second amended complaint states, in part:

## "XVII

"At all times material herein, defendant WESTERN OREGON CHRISTMAS TREES, INC., was and is a corporation duly organized under the laws of the State of Oregon with principal place of business in Marion County, Oregon.

## "XVIII

"Defendant corporation was, and is, a mere sham and did organize and operate as the alter ego of individual defendants for their personal advantage, in that individual defendants have at all times herein mentioned exercised total dominion and control over corporate defendant. Individual defendants were the first and, plaintiff is informed and believes and thereon alleges, the only directors of the corporate defendant. Individual defendants own or control all of the stock of the corporate defendant WESTERN OREGON CHRISTMAS TREES, INC. Individual defendants and corporate defendant have so intermingled their personal and financial affairs that corporate defendant was, and is, the alter ego of individual defendants."

Plaintiff's specific assignment is that the trial court erred in holding that evidentiary facts tending to prove ultimate facts in a pleading seeking to pierce a corporate veil must also be pleaded. Defendants denied the allegations contained in paragraphs XVII and XVIII, *supra.* As an affirmative defense, they alleged that those allegations failed to state a claim for relief. At trial, defendants objected on relevancy

grounds to plaintiff's evidence on the question of gross corporate undercapitalization. They argued that plaintiff's pleadings only stated a piercing theory based on commingling and that, because undercapitalization had not been pled as a *separate* theory, evidence of alleged undercapitalization was inadmissible.[4] The trial court agreed and sustained defendant's objection.[5] We conclude that the court was actually asked to rule on the sufficiency of plaintiff's pleadings.[6]

---

[4] Defendants' memorandum in support of their motion for partial summary judgment states:

"Salem Tent has raised the issue of whether WOCT was undercapitalized, presumably contending that this is leading to an alleged inability to collect from WOCT. The question is one of whether there was sufficient capital to cover the expected problems that would occur in the business. As shown above, the windstorm that created the problem herein was unexpected and 'an act of God.' WOCT did have insurance to protect it from the expected problems.

"Gross undercapitalization of a corporation is required before a shareholder can be held 'liable to a creditor who is unable to collect against the corporation because it was inadequately capitalized.' (Amfac Food v. Int'l Systems, *supra,* 294 Or at 109) (dicta) and the cases cited therein. WOCT was not grossly undercapitalized, it had adequate capital to provide for the normal risks of its business, as well as adequate funding for all its operations."

[5] Defendants contend that this court is limited to considering the record below, *see Arden-Mayfair v. Patterson,* 46 Or App 849, 857, 613 P2d 1062, *rev den* 290 Or 149 (1980), and that plaintiff cannot substitute materials collected in the appendix of its appellate brief for an offer of proof. However, all the materials in plaintiff's brief are also in the trial court record.

[6] The objection and colloquy occurred as follows:

"Q. [By plaintiffs' counsel] Now at the time of your incorporation at least the minutes suggest that each of you, you and Terry, contributed $2,500 in equipment—to the corporation. What was the anticipated magnitude of your sales effort for 1982?

"MR. THOMPSON: Your Honor, I object in that I don't see where this is relevant to the claim that plaintiff has plead (sic) in paragraph 18 * * *. It appears that what Mr. Kersh is attempting to do is pierce the corporate veil at this point by contending inadequate capitalization. That was not alleged. That is a separate theory by which one can pierce the corporate veil possibly set out in *Amfac* as one possible method in *dicta* like commingling of assets * * *.

"MR. KERSH: Your Honor, the issue is whether or not Mr. Ulven and Mr. Schmidt used Western Oregon Christmas Trees, Inc. as their *alter ego.*

"The issue that Mr. Thompson is raising is really factual issues and these factual issues are the issues that we're addressing here.

"The *Amfac* case stands for the proposition, amongst other things, that there are certain facts that should be taken into consideration when we're determining whether or not a corporation is an *alter ego* of its primary directors, officers and shareholders. Those factual elements include whether or not * * * the corporation was adequately financed * * *. These are all factual determinations going to the legal question of whether or not the corporation was the *alter ego* of those

■■ Generally, corporate shareholders enjoy limited liability—they are not responsible for the debts of a corporation beyond their capital contribution. ORS 57.131;[7] *Amfac Foods v. Int'l Systems, supra,* 294 Or at 102. Piercing the corporate veil to hold shareholders liable beyond their capital contribution is an extraordinary remedy to be used only as a last resort when a party is unable to obtain an adequate remedy from the corporation. *Amfac Foods v. Int'l Systems, supra,* 294 Or at 103. Under certain circumstances, however, corporate creditors may "pierce the corporate veil" and recover directly from shareholders. *Amfac Foods v. Int'l Systems, supra,* 294 Or at 103; *see Rice v. Oriental Fireworks Co.,* 75 Or App 627, 707 P2d 1250 (1985), *rev den* 300 Or 546 (1986); *Gardner v. First Escrow Corp.,* 72 Or App 715, 721, 696 P2d 1172, *rev den* 299 Or 314 (1985).

■■ Plaintiff must plead and prove three things to secure the benefit of piercing a corporate veil in order to impose liability on a shareholder under the alter-ego theory: (1) the shareholder must have actually controlled or shared in the actual control of the corporation; (2) the shareholder must have engaged in improper conduct in the exercise of control over the corporation; and (3) the shareholder's improper conduct must have caused the plaintiff's inability to obtain an adequate remedy from the corporation. *Amfac Foods v. Int'l Systems, supra,* 294 Or at 106-12. Plaintiff pled that the corporation was under the control of shareholders Ulven and Schmidt, that they had commingled their affairs with those of the corporation, a form of improper conduct, and that as a result plaintiff was unable to collect its debt. Thus, plaintiff

---

individuals.

"THE COURT: * * * We are bound by that which is in our pleading. Your motion is well taken and I will sustain your objection."

Defendants also contend that plaintiff cannot raise this issue on appeal, because it failed to make an offer of proof at trial. Because we hold that the court was actually asked to make a ruling on the pleadings, and because the evidence was admitted for other purposes at other points in the trial, we hold that plaintiff is not precluded from raising this issue on appeal.

[7] ORS 57.131(1) provides:

"A holder of or subscriber to shares of a corporation shall be under no obligation to the corporation or its creditors with respect to such shares other than the obligation to pay to the corporation the full consideration for which such shares were issued or to be issued."

was entitled to present proof on the issue of piercing the corporate veil to establish the factors to be considered in determining whether to pierce. Undercapitalization is one of those factors; it is not a separate piercing theory which they must plead. 294 Or at 109.

█ We conclude that plaintiff has presented a *prima facie* case for disregarding WOCT's corporate form. First, there was evidence that Schmidt and Ulven controlled the corporation. They were the corporation's only officers, they owned all of the corporate stock and they controlled its day-to-day operations. Second, there was evidence that Schmidt and Ulven engaged in improper conduct in their exercise of control over WOCT. They commingled personal and corporate assets; they failed to keep corporate records; and, despite the fact that WOCT had other creditors, they received all of its assets as compensation for their services on its dissolution.[8] They permitted WOCT to be involuntarily dissolved as a corportion and then transferred all of its personal property to their new corporation.[9]

There also was evidence that WOCT was undercapitalized. Its stated capital was represented to be $5,000. Schmidt's and Ulven's actual contributions were $1,559. WOCT needed to buy trees and rent tents. It borrowed $50,000 and then immediately spent $62,000 to buy trees. Plaintiff's tents were worth several thousand dollars. There was evidence that the tents were not insured while defendants had them,[10] There is no statutory minimum capitalization in Oregon, but a corporation must have sufficient capital, determined at the time it is formed, to cover its reasonably anticipated liabilities, measured by the nature and magnitude of its undertaking, the risks attendant to the particular

---

[8] Plaintiff also argues that Schmidt and Ulven "milked the profits of the corporation" in order to pay off a $50,000 loan. *See Amfac Foods v. Int'l Systems, supra,* 294 Or at 109-110. However, the evidence shows that the loan was made to the corporation with Schmidt and Ulven as guarantors and not to them as individuals.

[9] Schmidt and Ulven transferred all of WOCT's personal property to their new corporation, "Greenvalley Trees." The trial court's judgment provides that

"[A]ny transfer of personal property from Western Oregon Christmas Trees, Inc. to Greenvalley Trees * * * is to be transferred [back] as part of the judgment."

[10] At trial, Ulven testified that the insurance company would not insure property in which defendants did not have an equity.

enterprise and the normal operating costs associated with its business. *See Amfac Foods v. Int'l Systems, supra,* 294 Or at 109; *Rice v. Oriental Fireworks Co., supra; Gardner v. First Escrow Corp, supra.* Third, there was evidence that Schmidt's and Ulven's misconduct caused plaintiff to have an inadequate remedy against WOCT.

Plaintiff's pleadings, although not a model of clarity, nonetheless were sufficiently specific to put defendants on notice of plaintiff's "piercing" theory. The court should have permitted it to pursue its theory by offering any competent and relevant evidence on the issue.

■ Last, plaintiff contends that the trial court erred in denying its claim for attorney fees. This case involves an action on a contract. The obligation to pay damages that is alleged and under which plaintiff recovered is set out in the contract, and the attorney fees provision of the contract is applicable. Having prevailed, plaintiff is entitled to a reasonable attorney fee against WOCT and against Schmidt and Ulven, if, on remand, it is successful in imposing personal liability on them.

Judgment against Western Oregon Christmas Trees, Inc. affirmed and remanded for award of attorney fees; reversed and remanded as to defendants Schmidt and Ulven.